**TOWN OF FLOWER MOUND, Texas,**
**Appellant and Appellee,**

v.

**STAFFORD ESTATES LIMITED**
**PARTNERSHIP, Appellee**
**and Appellant.**

No. 2–00–205–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 14, 2002.

Rehearing Overruled March 14, 2002.

**24**

Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P., Robert F. Brown, Terrence S. Welch, Dallas, for appellant, Flower Mound.

Moseley & Standerfer, P.C., Gregory P. Standerfer, Bruce W. Bringardner, Dallas, for appellee, Stafford Estates.

Panel A: CAYCE, C.J.; DAY and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. Introduction.

In this development exaction case, the primary issue we must decide is whether the two-prong test articulated in *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) applies to a municipality's requirement that a developer construct and pay for offsite public improvements as a condition to plat approval for subdivision development. We conclude that the *Dolan* test applies to the public improvements development exaction in this case and that the exaction does not satisfy the *Dolan* test.

We must also decide what is the proper measure of damages when a development exaction does not satisfy the *Dolan* test and whether a developer can recover attorney's fees and expert witness fees under United States Code section 1988 if a state remedy adequately compensates the developer for any taking resulting from the development exaction. We hold that the proper measure of damages is the amount paid for the public improvements in excess of the amount roughly proportional to the consequences generated by the development minus any special benefits conferred on the development by the exaction. Applying this measure of damages, we hold that legally and factually sufficient evidence exists supporting the trial court's damages award. We also hold that the developer cannot recover section 1988 expert witness fees and attorney's fees if the state remedy provides adequate compensation because, in this circumstance, the developer's federal takings claim is not ripe. Accordingly, we will affirm the trial court's judgment in part and reverse and render in part.

### II. Background Facts.

The Town of Flower Mound ("Town") is a duly formed and validly existing home-rule city and a political subdivision of the State of Texas. In June 1994, the Town adopted its land development code. Section 4.04 of the land development code addresses standards for streets located within the Town. Section 4.04(b) requires all developers "to construct concrete streets according to the Engineering Standards Manual." Section 4.04(*o*) sets out the requirements a developer must satisfy when developing a subdivision abutting a street that does not meet the Town's minimum street design standards.[1] Section

---

1. Section 4.04(*o*) provides as follows:
 (*o*) **Construction and dedication of boundary streets.** Where a subdivision or industrial area abuts a street that does not meet the minimum design standards of this section, the following shall apply.

 (1) Local and collector streets. Abutting substandard local and collector streets shall be constructed or reconstructed as necessary by the developer to bring them up to minimum standards, and all right-of-way from the centerline of such roadway necessary to meet

4.04(a) allows developers to apply for and the Town Council to grant exceptions to the street design standards.[2]

Stafford Estates Limited Partnership ("Stafford") is a Texas limited partnership that purchased approximately 90 acres of vacant and unimproved land in the Town between 1994 and 1997 ("the Property"). The Property is generally located at the southeast corner of the intersection of two of the Town's roads: McKamy Creek Road and Simmons Road. Between 1994 and 1997, Stafford applied for, and the Town approved, three phases of a residential subdivision on the Property known as Stafford Estates ("the Subdivision"). The Subdivision contains approximately 247 single-family lots. Phase I of the Subdivision abuts McKamy Creek Road, and Phases II and III abut Simmons Road. All three phases have vehicular access to and from both McKamy Creek and Simmons Roads.

At the time Stafford acquired its interest in the Property, Simmons Road was an existing two-lane asphalt road, which was adjacent to the proposed Subdivision, but not part of the Property. Simmons Road was designated as a rural collector roadway on the Town's thoroughfare plan.

In December 1995, Stafford applied for record plat approval for Phase II of the Subdivision. As a condition to plat approval, the Town required Stafford to demolish the part of Simmons Road that abutted Phase II, replace it with a two-lane concrete road with three-foot concrete shoulders, and pay 100% of the cost of these improvements. The Town denied Stafford's request for an exception from this requirement.

In April 1997, Stafford applied for record plat approval for Phase III of the Subdivision. The town initially approved the record plat for Phase III without any obligation that Stafford improve Simmons Road. However, several weeks later at a preconstruction conference, the Town informed Stafford that Stafford would be required to improve the portion of Simmons Road that abutted Phase III in the same manner as had been required for Phase II and to again bear 100% of the cost.

At every administrative level within the Town, Stafford objected, unsuccessfully, to the Town's requirement that Stafford construct and pay for 100% of the Simmons Road improvements. The Town's land development code did not, however, require Stafford to sue to challenge this condition before receiving record plat approval, and Stafford did not sue before obtaining plat approval or constructing the improvements.

### III. Procedural History.

In 1998, after completing construction of the Simmons Road improvements, Staf-

---

minimum right-of-way requirements dedicated to the Town, with no cost participation from the Town. The Federal Government, the State of Texas, and political subdivisions of the State of Texas may be exempt from the provisions of this requirement.

(2) Major and minor arterials. In the event that the subdivision or industrial area proposes access to a planned major or minor arterial shown on the Thoroughfare Plan, no development plan or record plat shall be approved and no development permits shall be issued until such arterial is constructed or until agreement is reached between the Town and the developer on the financing and construction of such arterial.

2. Section 4.04(a) provides:

(a) **Exceptions to street standards.** The Town Council may grant an exception to the street design standards as contained in this section, provided that the Council finds and determines that such standards work a hardship on the basis of utility relocation costs, right-of-way acquisition costs, and other related factors.

ford sued the Town, contending that the plat approval condition was a taking without just compensation in violation of article I, section 17 of the Texas Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. Stafford later amended its pleadings to drop its Fourteenth Amendment claim and to assert an additional takings claim under section 1983 of the United States Code. Stafford's amended pleading also sought attorney's fees and expert witness fees under section 1988 of the United States Code.

The liability phase of the trial was tried to the court based on stipulated facts, and the parties also stipulated that Stafford's takings claims under the Texas Constitution, the Fifth Amendment, and section 1983 would be the claims tried during this phase. At the close of the liability phase, the trial court entered a judgment as to liability in Stafford's favor on all three of its takings claims. The trial court then heard evidence on damages, expert witness fees, attorney's fees, and costs and rendered a final judgment awarding Stafford damages, expert witness fees, attorney's fees, and costs. This appeal followed.

## IV. Standards of Review.

■ With the exception of the Town's sufficiency challenges to the amount of Stafford's damages award, the issues presented for our review are all questions of law. *See Weingarten Realty Investors v. Albertson's, Inc.*, 66 F.Supp.2d 825, 843 (S.D.Tex.1999) (holding that whether there has been a taking is a legal issue), *aff'd*, 234 F.3d 28 (5th Cir.2000); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928, 932–33 (Tex.1998) (holding that whether there has been a taking and whether federal takings claim is ripe are questions of law), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999); *Allied Vis-*

*ta, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.-Houston [14th Dist.] 1999, pet. denied) (stating that the correct measure of damages to be applied is a question of law). Accordingly, we will apply a de novo standard of review to the trial court's legal conclusions on these issues. *See Garner v. Long*, 49 S.W.3d 920, 922 (Tex.App.-Fort Worth 2001, pet. denied); *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex. App.-Waco 1997, pet. denied).

■ We review the Town's sufficiency challenges to Stafford's damages award under the traditional no-evidence and insufficient evidence standards. *See, e.g., Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996) (applying no-evidence standard of review); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965) (applying insufficient evidence standard of review). We will sustain a no-evidence challenge only when, considering only the evidence and inferences that tend to support the finding and disregarding all contrary evidence and inferences, the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999). We review a factual sufficiency challenge by examining all of the evidence to determine whether the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza*, 395 S.W.2d at 823.

## V. Waiver of Suit.

In its fifth issue on appeal, the Town asserts that Stafford is barred from challenging the Simmons Road improvements as a condition to plat approval because Stafford did not sue to challenge the requirement before obtaining final plat approval from the Town. The Town contends that, because Stafford sought to receive the benefit of plat approval without first filing suit, Stafford has consented to the condition, has waived any challenge to it, and should be estopped from challenging it.

The Town has not directed us to any Texas law that would require a landowner to sue to challenge a condition to plat approval before obtaining final approval of the plat. Instead, the Town relies on Minnesota and California cases in which the courts held that a developer must challenge the reasonableness of conditions to plat approval before obtaining final plat approval or the challenge is waived. *See Selby Realty Co. v. City of San Buenaventura,* 10 Cal.3d 110, 109 Cal.Rptr. 799, 514 P.2d 111, 122 (1973); *Crystal Green v. City of Crystal,* 421 N.W.2d 393, 394–95 (Minn. Ct.App.1988); *Pfeiffer v. City of La Mesa,* 69 Cal.App.3d 74, 76, 137 Cal.Rptr. 804 (Cal.Ct.App.1977); *see also Trimen Dev. Co. v. King County,* 65 Wash.App. 692, 829 P.2d 226, 228–29 (1992), *aff'd,* 124 Wash.2d 261, 877 P.2d 187 (1994). The rationale underlying these decisions is that, to allow for the orderly administration of municipal affairs, municipalities must be given an opportunity to change their plat requirements if the requirements are unreasonable rather than later being forced to pay monetary compensation to developers. *See Crystal Green,* 421 N.W.2d at 395; *Pfeiffer,* 69 Cal.App.3d at 78, 137 Cal.Rptr. 804.

Each of these cases,[3] however, pivots on a state statute or rule that either authorizes or requires a developer to challenge the plat requirement before filing the plat. In *Crystal Green,* the Minnesota Court of Appeals cited Minnesota Statutes section 462.361, outlining a judicial review procedure to be used by a person aggrieved by an ordinance, rule, regulation, decision, or order conditioning land use, for the proposition that Crystal Green should have challenged the plat requirement prior to final plat approval. *Crystal Green,* 421 N.W.2d at 394. In *Selby Realty Co.* and *Pfeiffer,* the California Supreme Court and Court of Appeals, respectively, cited California Code of Civil Procedure section 1094.5, providing an administrative mandamus procedure as the proper vehicle to challenge a condition in a building permit rather than a post-compliance-with-the-condition lawsuit. *Selby Realty Co.,* 109 Cal. Rptr. 799, 514 P.2d at 122; *Pfeiffer,* 69 Cal.App.3d at 76–77, 137 Cal.Rptr. 804. In *Trimen Development Co.,* the Washington Court of Appeals cited RCW 58.17.180, authorizing judicial review of any decision approving or disapproving a plat if application for such review is made within thirty days of the plat decision, as the procedure controlling a challenge to a plat requirement instead of a post-compliance-with-the-requirement lawsuit. *Trimen Dev. Co.,* 829 P.2d at 226.

---

**3.** We do not discuss several of the cases cited by the Town in support of its waiver argument because they are factually inapposite to the present case. *See Agins v. City of Tiburon,* 157 Cal.Rptr. 372, 598 P.2d 25, 30 (1979) (holding that in denial of development case, proper remedy is invalidation of ordinance, not suit for monetary damages), *aff'd,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *County of Imperial v. McDougal,* 19 Cal.3d 505, 138 Cal.Rptr. 472, 564 P.2d 14, 18 (1977) (dealing with rights of successor in title to challenge existing condition on land use), *appeal dismissed,* 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 306 (1977).

Texas, however, has no such statutes or rules. Instead, the Texas statutory scheme governing municipal regulation of subdivisions and property development—including plat approval—does not require a pre-approval challenge. *See generally* Tex. Loc. Gov't Code Ann. §§ 212.001–.903 (Vernon 1999 & Supp. 2002). The legislature *has* severely curtailed the time in which an aggrieved party may seek judicial review of a municipality's decisions concerning zoning and impact fees. *See id.* § 211.011 (Vernon Supp. 2002) (providing that petition for judicial review must be filed within ten days after date adverse zoning decision is filed in office of board of adjustment); *id.* § 395.077 (Vernon 1999) (providing that suit to contest impact fee must be filed within ninety days after date of establishment of impact fee).

The legislature has also enacted legislation under which a land owner can sue to invalidate some governmental land-use regulations that may effect a taking of real property. *See* Tex. Gov't Code Ann. §§ 2007.001–.045 (Vernon 2000); Daniel Anderson, *The Texas "Takings" Statute: Ten Basic Facts to Know*, 60 Tex. B.J. 12, 14–15 (1997). The deadline for filing this type of suit is also shortened,[4] but this remedy is in addition to the other legal remedies available to the property owner. Tex. Gov't Code Ann. § 2007.006(a). The legislature specifically exempted a municipality's actions regulating in-city land use from the provisions of the Texas takings statute. *Id.* § 2007.003(b)(1) (providing that chapter 2007 is inapplicable to an action by a municipality except an action that imposes nonuniform regulations in the municipality's extraterritorial jurisdiction); Anderson, 60 Tex. B.J. at 15 (recognizing that the Texas takings statute "does not apply to regulations enacted by cities at all, except for non-uniform regulations imposed by a city outside its city limits but within its extraterritorial jurisdiction").

The Texas Legislature could have placed procedural or substantive limitations on suits to challenge conditions imposed by a municipality for plat approval of developments within the municipality, but chose not to. Absent such a statute or rule requiring Stafford to sue to challenge the Simmons Road improvements condition before obtaining plat approval, we decline to impose such a requirement on Stafford. Further, we note that the Town initially approved the plat for Phase III *without* any condition that Stafford improve Simmons Road. Thus, as to the Simmons Road improvements abutting Phase III, Stafford could not have filed suit before plat approval. Finally, we note that Stafford did unsuccessfully object to the Simmons Road improvements condition at every administrative level within the Town. We overrule the Town's fifth issue.

## VI. Applicability of the *Dolan* Test.

### A. What is the *Dolan* Test?

An explanation of the *Dolan* test must begin with a very basic review of takings jurisprudence. The Fifth Amendment of the United States Constitution and article I, section 17 of the Texas Constitution prohibit the taking of private property—both real and personal, and including money—for public use without just compensation.[5] *See Village of Norwood v.*

---

4. Tex. Gov't Code Ann. § 2007.021(b) (providing that suit must be filed within 180 days after date property owner knew or should have known that governmental action restricted or limited owner's property rights).

5. "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend V.

"No person's property shall be taken, damaged or destroyed for or applied to public use

*Baker*, 172 U.S. 269, 279, 19 S.Ct. 187, 190–91, 43 L.Ed. 443 (1898) (holding that assessing against property owner the cost of public improvements to road abutting owner's property was a taking under Fifth Amendment to the extent assessment substantially exceeded value of special benefits caused by improvements); *Haynes v. City of Abilene*, 659 S.W.2d 638, 639 (Tex. 1983) (holding taking occurred under article I, section 17 where assessment against property for cost of repaving abutting road was materially greater than special benefits conferred by new pavement); *accord City of Houston v. Blackbird*, 394 S.W.2d 159, 162 (Tex.1965); *Hutcheson v. Storrie*, 92 Tex. 685, 51 S.W. 848, 850 (1899). The prohibition against uncompensated takings was "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

▇▇ Several different general categories of takings claims exist. *See* Wendie L. Kellington, *New Takes on Old Takes: A Takings Law Update*, SG021 ALI-ABA 511, 514–15 (2001);[6] *accord Dolan*, 512 U.S. at 385–86, 114 S.Ct. at 2316–17 (implicitly recognizing three takings categories: a taking by physical invasion, a typical regulatory taking, and an unconstitutional conditions taking); *Mayhew*, 964 S.W.2d at 933 (recognizing two categories of takings: takings by physical invasion and regulatory takings). A physical taking may occur when the government authorizes an unwarranted physical occupation of an individual's property. *Mayhew*, 964 S.W.2d at 933. A regulatory taking may occur when governmental land-use regulation deprives a land owner of all economically viable use of his land or when the land-use regulation does not substantially advance a legitimate state interest. *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 698, 119 S.Ct. 1624, 1633, 143 L.Ed.2d 882 (1999) (categorizing the city's repeated rejections for five-year period of nineteen plans submitted by developer as a "regulatory taking" by denial of all development); *Agins*, 24 Cal.3d 266, 157 Cal.Rptr. 372, 598 P.2d at 28 (holding zoning ordinance limiting construction on five-acre tract to five dwellings did not deprive owner of all economically viable land use, did substantially advance legitimate state interests, and therefore did not effectuate a taking); *Mayhew*, 964 S.W.2d at 935 (holding zoning ordinance requiring one-acre minimum lot size did not deprive owner of all economically viable land use, did substantially advance legitimate state interests, and therefore did not effectuate a taking); *City of Glenn Heights v. Sheffield Dev. Co.*, 61 S.W.3d 634, 639 (Tex.App.-Waco 2001, pet. filed) (recognizing regulatory taking when zoning ordinance imposed temporary moratorium on development applications). In these cases, the application of the regulation itself or the governmental regulatory action purportedly effectuates a taking by impermissibly limiting a land owner's desired *use* of *or activity* on his property in toto or partially for some reason not sufficiently related to a legitimate state interest.

without adequate compensation being made, unless by the consent of such person[.]" Tex. Const. art. I, § 17.

6. This author reasons that five basic types of takings claims exist: (1) the per se physical occupation takings claim; (2) the categorical takings claim; (3) the facial takings claim; (4) the "as applied" partial takings claim; and (5) the unconstitutional conditions takings claim. *Id.*

■ A distinct category of regulatory takings may occur when the government conditions the granting of permit approval, plat approval, or some other type of governmental approval on an exaction[7] from the approval-seeking landowner. *See, e.g., Dolan,* 512 U.S. at 377, 114 S.Ct. at 2312 (involving city's action in conditioning approval of Dolan's building permit on her dedication of a portion of her property to city for flood control and traffic improvements); *Nollan v. Cal. Coastal Comm.,* 483 U.S. 825, 827, 107 S.Ct. 3141, 3143, 97 L.Ed.2d 677 (1987) (involving California Costal Commission's action in conditioning grant of the Nollans' costal development permit to demolish and rebuild their house on their existing beachfront lot on their dedication of a public easement across their beachfront); *Ehrlich v. City of Culver City,* 12 Cal.4th 854, 50 Cal.Rptr.2d 242, 911 P.2d 429, 439 (1996) (recognizing that neither *Nollan* nor *Dolan* are conventional regulatory takings cases), *cert. denied,* 519 U.S. 929, 117 S.Ct. 299, 136 L.Ed.2d 218 (1996). In an exaction takings case, the landowner is not simply denied or restricted in some desired use of his property. Rather, in an exaction takings case, some action—the exaction—is required of the landowner as a condition to obtaining governmental approval.

In exaction cases, the United States Supreme Court has formulated a two-part test for use in determining whether the exaction constitutes an impermissible taking. *Dolan,* 512 U.S. at 386, 114 S.Ct. at 2317. The reviewing court first determines whether an essential nexus exists between a legitimate state interest and the condition exacted by the government. *Nollan,* 483 U.S. at 836, 107 S.Ct. at 3148. If an essential nexus exists, the court must decide the required degree of connection between the exaction and the projected impact of the proposed land use. *Dolan,* 512 U.S. at 386–88, 114 S.Ct. at 2317–18. No precise mathematical calculation is required, but the government must make some sort of individualized determination that the exaction is roughly proportional in both nature and extent to the proposed impact of the proposed land use submitted for governmental approval. *Id.* at 391, 114 S.Ct. at 2319–20.

■ The *Dolan* two-part test is required in exaction cases to prevent opportunistic takings by the government simply because a landowner is seeking some type of land-related governmental approval.[8] Governmental permit or plat approval conditioned upon the landowner's performance of an exaction has even been de-

---

7. Generally, any requirement that a developer provide or do something as a condition to receiving municipal approval is an exaction. Daniel S. Huffenus, *Dolan Meets Nollan: Towards a Workable Takings Test for Development Exactions Cases,* 4 N.Y.U. Envtl. L.J. 30, 33 (1995). An exaction may require the dedication of land or a real property interest, the payment of fees, or the financing of public improvements. *See Village of Norwood,* 172 U.S. at 279, 19 S.Ct. at 191 (referring to assessment against property for improvements to abutting road as an exaction); *Storrie,* 51 S.W. at 850 (same); *see also* Terry D. Morgan, *Development Exactions: Avoiding and Defeating Dolan Challenges,* Land Use Law & Zoning Digest, September 2000, at 4–5.

8. *See* Alan Romero, *Two Constitutional Theories for Invalidating Extortionate Exactions,* 78 Neb. L.Rev. 348, 349 (1999). This author explains the concept as follows:

A condition to a land-use permit is invalid if it is insufficiently related or proportionate to the negative effects that would justify denying the permit. Such conditions, or exactions may be considered extortionate because the government uses the threat of denial to extract some property interest from the owner, rather than simply trying to mitigate the negative public effects from the proposed land use.

*Id.* (footnote omitted)

scribed as regulatory "leveraging." *Ehrlich,* 50 Cal.Rptr.2d 242, 911 P.2d at 438. For example, in *Nollan,* the United States Supreme Court pointed out that it had "no doubt" a taking would have occurred had the State of California simply required the Nollans to grant a public easement across their property rather than conditioning the approval of the Nollans' building permit on the grant of the easement. *Nollan,* 483 U.S. at 831, 107 S.Ct. at 3145. The State of California could not "take" or "leverage" the easement it wanted simply by conditioning a building permit on the granting of the easement unless the required easement was closely connected to a legitimate state interest. *Id.* Additionally, the exaction or concession forced upon the landowner to obtain governmental approval of proposed land use must be roughly proportional to the effect or public consequences generated by the proposed land use. *See Dolan,* 512 U.S. at 386, 114 S.Ct. at 2317. This is the two-pronged *Dolan* test;[9] that an essential nexus exist between the exaction and a legitimate state interest and that the exaction be roughly proportional to the public consequences of the requested land use.

In this case, Stafford asserts that the Town's conditioning of plat approval on the Simmons Road improvements constituted a taking. The Town contends in its first issue that the trial court erred in concluding that the Simmons Road improvements condition to plat approval was an unconstitutional taking under the *Dolan* rough proportionality standard.[10] The Town asserts that the *Dolan* test applies only to (1) development exactions that require a *dedication of real property* as a condition of development approval and (2) *adjudicative decisions* not imposed pursuant to legislative standards. Because the Simmons Road improvements condition did not require a dedication of land and, according to the Town, did not involve an adjudicative decision, the Town contends that the *Dolan* test has no application here.

**B. Does the *Dolan* Test Apply Only to Development Exactions That Involve the Dedication of Real Property?**

In support of its position that the *Dolan* test applies only to dedicatory exactions, the Town relies on the Supreme Court's decision in *City of Monterey v. Del Monte Dunes.* As mentioned previously, *Del Monte Dunes* involved a complete denial of development, not alleged excessive development exactions. Consequently, the Supreme Court in *Del Monte Dunes* concluded that *Dolan's* rough proportionality test "was not designed to address, and is not readily applicable to, the much different questions arising where … the landowner's challenge is based not on excessive exactions but on denial of development." 526 U.S. at 703, 119 S.Ct. at 1635. The *Del Monte Dunes* holding is logical. If no exaction, i.e., no action or concession, is required of the landowner, a determination cannot be made about whether the action or concession bears an essential nexus to a legitimate state interest and is roughly proportional to the public consequences of

---

**9.** The two-pronged essential nexus (*Nollan*) and rough proportionality (*Dolan*) test is referred to interchangeably by courts as the *Nollan/Dolan* test or the *Dolan* test. *Dolan,* 512 U.S. at 386, 114 S.Ct. at 2317 (incorporating *Nollan's* essential nexus requirement as the test's first prong and articulating the rough proportionality requirement as the test's second prong).

**10.** Although the Town utilizes the phrase the *Dolan* "rough proportionality test" in its issues and brief, we construe the Town's arguments as challenging the applicability of both prongs of the *Dolan* test, not just *Dolan's* second rough proportionality prong.

the requested land use. Thus, the fact that the Supreme Court in *Del Monte Dunes* refused to apply the *Dolan* test to a complete-denial-of-development case does not persuade us that the *Dolan* test does not apply to this development-exaction case.

The Court in *Del Monte Dunes* also noted it had not extended the *Dolan* test "beyond the special context of exactions—land-use decisions conditioning approval of development on *the dedication of property to public use.*" *Id.* (emphasis added). The Town would have us construe this statement as a refusal by the Supreme Court to apply the *Dolan* test except to exactions requiring the dedication of land or an interest in real property. We interpret the Supreme Court's comment, however, as contrasting exactions, albeit those involving a dedication of land, with denials of development and holding that the *Dolan* test does not apply to denials of development. The fact that the Supreme Court has not yet applied the *Dolan* test to a development exaction of fees or public improvements, as opposed to a dedication of land, does not mean that the *Dolan* test does not apply. Accordingly, we decline to globally limit the application of the *Dolan* test to only dedicatory exactions in the manner the Town urges based on the quoted statement from the *Del Monte Dunes* opinion. *See Benchmark Land Co. v. City of Battle Ground,* 103 Wash.App. 721, 14 P.3d 172, 173 (2000, review granted) (rejecting proposition that *Del Monte Dunes,* a denial of development case, instead of an exactions case, prohibits application of *Dolan* test to challenged monetary development exaction).

Instead, we will consider whether the *Dolan* test should apply to the present facts based on existing case law. The Simmons Road improvements condition did not require Stafford to make a dedication of real property to the Town. The term "dedication" has been limited historically to real property interests. *See* BLACK'S LAW DICTIONARY 421 (7th ed.1999) (defining "dedication" as "[t]he donation of land or creation of an easement for public use"); *Scott v. Cannon,* 959 S.W.2d 712, 718 (Tex.App.-Austin 1998, pet. denied) ("Dedication is the act of appropriating private land to the public for any general or public use."); *Fazzino v. Guido,* 836 S.W.2d 271, 274 (Tex.App.-Houston [1st Dist.] 1992, writ denied) ("Dedication occurs when a land-owner sets apart his land for public use."); *Copeland v. City of Dallas,* 454 S.W.2d 279, 282 (Tex.Civ.App.-Dallas 1970, writ ref'd n.r.e.) ("[D]edication is in the nature of a donation of one's land to the public for a public use without consideration. . . ."). Although Stafford used its private, personal property (money) for a public use (constructing the Simmons Road improvements), that use did not constitute a "dedication" of property as that term has been defined in the case law.[11]

Numerous courts have applied the *Dolan* test to nondedicatory development exactions of fees or public improvements similar to the Simmons Road improvements condition. *See, e.g., Christopher Lake Dev. Co. v. St. Louis County,* 35 F.3d 1269, 1275 (8th Cir.1994) (remanding public improvements development exaction claim and indicating that *Dolan* standard should be applied on remand); *Ehrlich,* 50 Cal.Rptr.2d 242, 911 P.2d at 439 (holding

---

**11.** Stafford characterizes its construction of the Simmons Road improvements as a dedication of a real property interest to the Town. In its findings of fact and conclusions of law, however, the trial court concluded that "[t]he Development Exaction . . . did not involve any property interest other than money," and "[t]he Development Exaction did not require the dedication of property to public use." Stafford does not challenge these conclusions.

that *Dolan* test applied to city's purely monetary exactions imposed as a condition to approval of rezoning request); *Home Builders Ass'n v. City of Napa*, 90 Cal. App.4th 188, 108 Cal.Rptr.2d 60, 67 n. 5 (2001) (noting that *Nollan/Dolan* analysis applies whether governmental entity requires conveyance of property or payment of fee); *Benchmark Land Co.*, 14 P.3d at 173 (holding that *Nollan/Dolan* test applied where development condition exacted money for repair of street adjoining, but outside of, development); *Art Piculell Group v. Clackamas County*, 142 Or.App. 327, 922 P.2d 1227, 1230 (1996) (applying *Dolan* test to condition of development that required ten-foot property dedication and partial improvement of street abutting proposed subdivision); *Clark v. City of Albany*, 137 Or.App. 293, 904 P.2d 185, 189 (1995) (holding that *Dolan* test applied to development exactions that required developer to improve public road and shoulder abutting proposed restaurant site), *review denied*, 322 Or. 644, 912 P.2d 375 (1996). *But see Henry v. Jefferson County Planning Comm'n*, 148 F.Supp.2d 698, 709 n. 142 (N.D.W.Va.2001) (refusing to apply *Dolan* test to use permit conditions that required public improvements to property, among other things, because conditions did not involve dedication of land for public use).

Applying the *Dolan* test to development exactions that require the dedication of land, but not to exactions that require the payment of fees or the making of public improvements, would result in a bifurcated review of development exactions in situations in which a city conditioned development of a particular parcel on both types of exactions. Because both types of exactions involve conditional governmental land use approval and present the same opportunities for governmental "leveraging," we believe the most workable solution is to subject both types of exactions to the same constitutional test. *See, e.g., Art Piculell Group*, 922 P.2d at 1230 (applying *Dolan* test to development exactions that required ten-foot property dedication and partial improvement of street abutting proposed subdivision).

 The Town cites numerous cases in support of its position that the *Dolan* test applies only to exactions that require a dedication of real property. These cases, however, are distinguishable because they involve categories or types of takings claims not present here, such as denial-of-development situations,[12] impact fees,[13] or other land-use regulations not involving an exaction.[14] The *Dolan* test is intended to address:

land use 'bargains' between property owners and regulatory bodies—those in

12. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 766, 772 n. 11 (9th Cir.2000) (noting but not applying *Nollan/Dolan* test to complaint that temporary moratorium on land development while new regional land-use plan was being devised effected a taking of landowners' property), *cert. granted in part*, 533 U.S. 948, 121 S.Ct. 2589, 150 L.Ed.2d 749 (2001); *Recreational Devs. of Phoenix, Inc. v. City of Phoenix*, 83 F.Supp.2d 1072, 1076, 1100 n. 14 (D.Ariz.1999) (addressing challenge to city ordinance that prohibited operation of businesses formed to provide opportunity to observe or participate in sexual conduct), *aff'd*, 238 F.3d 430 (9th Cir.2000).

13. *See Arcadia Dev. Corp. v. City of Bloomington*, 552 N.W.2d 281, 286 (Minn.App.1996) (refusing to apply *Dolan* test to city ordinance requiring all mobile home park owners who closed their parks to pay residents' relocation costs because ordinance was a citywide regulation). *But see Home Builders' Ass'n v. Beavercreek*, 89 Ohio St.3d 121, 729 N.E.2d 349, 355–56 (2000) (applying *Nollan/Dolan* test to impact fees generally imposed to construct new roadways).

14. *See E. Enters. v. Apfel*, 524 U.S. 498, 554–55, 118 S.Ct. 2131, 2156, 2161–62, 141 L.Ed.2d 451 (1998) (Kennedy, J., concurring in judgment and dissenting in part, Stevens, J.

which the local government conditions permit approval for a given use on the owner's surrender of benefits which *purportedly* offset the impact of the proposed development. It is in this paradigmatic permit context—where the individual property owner-developer seeks to negotiate approval of a planned development—that the combined *Nollan* and *Dolan* test quintessentially applies.

*Ehrlich*, 50 Cal.Rptr.2d 242, 911 P.2d at 438; *accord Home Builders Ass'n*, 108 Cal.Rptr.2d at 66. Accordingly, the fact that courts have refused to apply the *Dolan* test in non-land-use bargain cases, such as in the cases cited by the Town, does not preclude application of the *Dolan* test when land-use bargains, such as the Simmons Road condition, are at issue. We hold that the trial court did not err in concluding that the *Dolan* test applies to the Simmons Road improvement condition even though it is a nondedicatory development exaction.

**C. Was the Town's Simmons Road Improvement Condition an Adjudicative Exaction Decision?**

The Town argues that the *Dolan* test does not apply to the Simmons Road improvements condition because sections 4.04(a) and (o) of the Town's land development code are legislatively created standards governing the Town's street improvement requirements. In *Dolan*, the Supreme Court ruled that a city's decision placing development exactions on a building permit, based on the city's application of its community development code, was an adjudicatory decision, not a legislative one. 512 U.S. at 377–78, 391 n. 8, 114 S.Ct. at 2313, 2320, n. 8. But the Supreme Court left open the question of whether the *Dolan* test applies to legislatively enacted, uniformly applied, development exactions, such as impact fees. *Id.* at 385, 114 S.Ct. at 2316. Currently, that issue is unsettled. *See, e.g.,* Richard Duane Faus, *Exactions, Impact Fees, and Dedications Local Government Responses to Nollan/Dolan Takings Law Issues*, 29 Stetson L.Rev. 675, 693–701 (2000) (recognizing a "nationwide split of authority" on whether the *Dolan* test applies to legislatively enacted, uniformly applied impact fees); Inna Reznik,

dissenting) (arguing that law requiring coal industry to fund lifetime medical benefits for coal industry retirees did not effect a taking because no interest in physical or intellectual property was taken, and statute only required coal companies to pay money to private parties, not the government-so government did not permanently appropriate any assets, and money was paid for private, not public, use); *New Port Largo, Inc. v. Monroe County*, 95 F.3d 1084, 1088 (11th Cir.1996) (rejecting landowner's argument that rezoning of land from residential duplex to private airport use was subject to *Nollan/Dolan* analysis because rezoning did not require landowner to allow public on property), *cert. denied*, 521 U.S. 1121, 117 S.Ct. 2514, 138 L.Ed.2d 1016 (1997); *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1578–79 (10th Cir.1995) (refusing to apply *Dolan* test to state regulation putting two-license limit on hunting for large landowners); *Jim Sowell Constr. Co. v. City of*

*Coppell*, 2000 WL 968782, at *2–4 (N.D.Tex. July 12, 2000) (refusing to apply *Dolan* test to down-zoning of property from multi-family to single-family use and subsequent denial of multi-family permit); *Kittay v. Giuliani*, 112 F.Supp.2d 342, 351 & n. 8 (S.D.N.Y.2000) (addressing facial challenge to constitutionality of clean water laws), *aff'd*, 252 F.3d 645 (2nd Cir.2001); *Pringle v. City of Wichita*, 22 Kan.App.2d 297, 917 P.2d 1351, 1357 (1996) (holding *Dolan* test did not apply to city's decision to close intersection while completing freeway); *Sprenger, Grubb & Assocs., Inc. v. City of Hailey*, 127 Idaho 576, 903 P.2d 741, 747 (1995) (refusing to apply *Dolan* test to city's rezoning of business property where no conditions to rezoning were exacted against property); *Snider v. Bd. of County Comm'rs*, 85 Wash.App. 371, 932 P.2d 704, 709 (1997) (holding that *Dolan* did not apply to implicit development condition that developer acquire rights-of-way from third parties).

*The Distinction Between Legislative and Adjudicative Decisions in Dolan v. City of Tigard,* 75 N.Y.U.L.Rev. 242, 264, 267 (2000) (arguing it is "prohibitively difficult and unrealistic to draw a line between legislative and adjudicative decisions" and recommending a "functional approach, with a focus on the nature of the decision").

 We are not called upon to decide here whether the *Dolan* test applies to legislatively enacted, uniformly applied exactions. We simply hold that the *Dolan* test applies to the Simmons Road improvements condition to plat approval in this case because the condition was largely the result of an adjudicative decision related to Phases II and III of the Subdivision that was required because the Town does not uniformly apply sections 4.04(a) and (*o*) of its land development code.

In Texas, the decision to approve or deny a plat is a quasi-judicial function. *See City of Round Rock v. Smith,* 687 S.W.2d 300, 303 (Tex.1985); *Woodson Lumber Co. v. City of College Station,* 752 S.W.2d 744, 747 (Tex.App.-Houston [1st Dist.] 1988, no writ). This is because in deciding whether to approve or disapprove a proposed plat, a city's planning commission must interpret and construe the city plan, applicable ordinances, and state statutes to determine whether the plat complies with these regulations.[15] *See City of Round Rock,* 687 S.W.2d at 303. Indeed, the Town stipulated that it exercised discretion in denying Stafford's application for an exception to the street standards set out in section 4.04(*o*) of its land development code.

In addition, the Town stipulated that it has excepted other developers from the requirements of section 4.04(*o*) on a project-by-project basis, pursuant to the authority granted by section 4.04(a). Specifically, the Town stipulated:

● The Town engineer permitted the developer of the Landing Subdivision to escrow one-half of the cost of constructing improvements to the portion of Wichita Trail abutting that subdivision, and the developer was not required to comply with the requirements of section 4.04(*o*).

● The Town permitted the developer of Immel Estates to overlay asphalt on the portion of High Ridge Road abutting the subdivision and, pursuant to section 4.04(a), did not require the developer to comply with the requirements of section 4.04(*o*).

● The Town did not require the developer of the Wright Estates Subdivision, which abuts a portion of Simmons Road that Stafford improved, to reimburse Stafford for any portion of the costs Stafford incurred in constructing the Simmons Road improvements.

These facts demonstrate, as the Town also stipulated, that the Town has enforced or

---

15. We decline to follow *Shelton v. City of College Station,* 780 F.2d 475, 482 (5th Cir.) (holding that denial of variance to zoning ordinance was a legislative act), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986) because that case predates both *Nollan* and *Dolan.* In addition, Texas courts have held decisions on requests for zoning variances are quasi-judicial, not legislative, in nature. *See Swain v. Bd. of Adjust.,* 433 S.W.2d 727, 731 (Tex.Civ.App.-Dallas 1968, writ ref'd n.r.e.) (noting that board of adjustment acts as a quasi-judicial body when acting on variance requests and has no power to legislate), *cert. denied,* 396 U.S. 277, 90 S.Ct. 563, 24 L.Ed.2d 465 (1970); *see also Wende v. Bd. of Adjust.,* 27 S.W.3d 162, 167 (Tex.App.-San Antonio 2000, pet. granted) (holding that, as a quasi-judicial body, board of adjustment "has no discretion in determining what the law is or in applying the law to the facts").

eased the requirements of section 4.04(*o*) on a project-by-project basis.

 Finally, the Town stipulated that the plat for Phase III of the Subdivision was initially approved without the Simmons Road improvements condition. It was not until several weeks later, at a preconstruction conference, that the Town informed Stafford it would be required to improve the portion of Simmons Road that abutted Phase III. We cannot perceive how this decision can be characterized as other than an adjudicative, or even ad hoc, decision.

> It is the imposition of land use conditions in individual cases, authorized by a permit scheme which by its nature allows for both the discretionary deployment of the police power and an enhanced potential for its abuse, that constitutes the sine qua non for application of the ... standard of scrutiny formulated by the court in *Nollan* and *Dolan*.

*Ehrlich*, 50 Cal.Rptr.2d 242, 911 P.2d at 439. The stipulated facts establish that the Town selectively conditions plat approval on compliance with sections 4.04(a) and (*o*) to some, but not all, developers. It is this adjudicative, selective enforcement of sections 4.04(a) and (*o*) that triggers the *Dolan* analysis, not whether sections 4.04(a) and (*o*) were legislatively enacted. *See Schultz v. City of Grants Pass*, 131 Or.App. 220, 884 P.2d 569, 572–73 (1994); *see also Dolan*, 512 U.S. at 385, 114 S.Ct. at 2316 (contrasting "essentially legislative determinations classifying entire areas of the city," which are not subject to the *Dolan* test, with adjudicative decisions that concern individual parcels); *Ehrlich*, 50 Cal.Rptr.2d 242, 911 P.2d at 443–44 (noting that a lesser standard of scrutiny may be applied to legislatively formulated development assessments imposed on a broad class of property owners, "because

the heightened risk of the 'extortionate' use of police power to exact unconstitutional conditions is not present").

The Town cites three cases to support its position that the *Dolan* test does not apply to "generally applicable legislative ordinances such as the Town's street improvement requirements." *See Home Builders Ass'n v. City of Scottsdale*, 187 Ariz. 479, 930 P.2d 993, 1000 (1997), *cert. denied*, 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997); *Arcadia Dev. Corp.*, 552 N.W.2d at 286; *Parking Ass'n of Ga., Inc. v. City of Atlanta*, 264 Ga. 764, 450 S.E.2d 200, 203 n. 3 (1994), *cert. denied*, 515 U.S. 1116, 115 S.Ct. 2268, 132 L.Ed.2d 273 (1995). Because the cases relied upon by the Town *do* involve uniformly applied, legislatively enacted exactions, as opposed to the nonuniformly applied exaction here, they are factually distinct from the present case and are not controlling. *See Home Builders Ass'n*, 930 P.2d at 1000 (holding that *Dolan* did not apply to water resources development fee that was imposed on all new developments within city because impact fee was the result of a generally applicable legislative decision); *Arcadia Dev. Corp.*, 552 N.W.2d at 286 (refusing to apply *Dolan* test to city ordinance requiring all mobile home park owners who closed their parks to pay residents' relocation costs because ordinance was a citywide regulation); *Parking Ass'n of Ga., Inc.*, 450 S.E.2d at 203 n. 3 (holding that *Dolan* test did not apply to municipal regulation requiring landowners to install landscaping and trees in surface parking lots with three or more spaces because *regulation was the result of* legislative determination applicable to many landowners).

We hold that the *Dolan* test applies to the Simmons Road improvements condition and that the condition effected a taking unless it satisfies the *Dolan* test. We

overrule the portion of the Town's first issue that complains the *Dolan* test is not applicable to the Simmons Road improvements condition.

### D. Does the Dolan Test Apply To Article I, Section 17 Takings Claims?

In its third issue, the Town asserts that the trial court erred by concluding that there was a taking of Stafford's property under article 1, section 17 of the Texas Constitution. The Town asserts that the *Dolan* test is inapplicable to a takings claim under the Texas Constitution and that Stafford did not plead or prove a taking of its property under the Texas Constitution.

 The United States Constitution sets the floor for constitutional protections; state constitutions establish the ceiling. *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex.1986). State constitutions cannot subtract from the rights guaranteed by the federal constitution, although they can provide additional rights for their citizens. *See PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980); *Davenport v. Garcia*, 834 S.W.2d 4, 15 (Tex.1992). The Supreme Court has held that the *Dolan* test "best encapsulates what we hold to be the requirement of the Fifth Amendment." *Dolan*, 512 U.S. at 391, 114 S.Ct. at 2319. Thus, at a minimum, article I, section 17 of the Texas Constitution affords Texas citizens the right to have adjudicative development exactions scrutinized under the *Dolan* standard. To the extent that the "reasonable connection" test adopted by the Texas Supreme Court in *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 806–07 (Tex.1984) requires a less rigorous review of development exactions, it has been superseded by the *Dolan* test. *See Dolan*, 512 U.S. at 391, 114 S.Ct. at 2319 (citing *City of College Station* opinion, but refusing to adopt "reasonable rela-

tion" test, despite it being closer to federal constitutional norm than other tests adopted by state courts).

The Town also contends that Stafford did not plead a taking under the Texas Constitution because "the only cause of action fairly pleaded was Stafford's contention that the Simmons Road Improvements did not meet the rough proportionality standard under *Dolan*." The *Dolan* rough proportionality standard is not a cause of action; it is a legal standard courts use in determining whether certain types of land-use regulations have effected a taking. A development exaction effects a taking, when it does not satisfy the *Dolan* test. *See infra* at 31–32, 40.

 Texas follows a "fair notice" pleading standard, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant at trial. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex.2000). "A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Id.* at 897 (quoting *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex.1982)); *see also* Tex.R. Civ. P. 47 (providing that a pleading setting forth a claim for relief must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, a statement that the damages sought are within the jurisdictional limits of the court, and a demand for judgment). A pleading that gives adequate notice will not fail merely because the draftsman named it improperly. *See CKB & Assoc., Inc. v. Moore McCormack Petro., Inc.*, 809 S.W.2d 577, 586 (Tex.App.-Dallas 1991, writ denied) (op. on reh'g).

Stafford alleged in its petition:

- The Town conditioned plat approval of Phases II and III of the Subdivision upon Stafford constructing and paying for 100% of the Simmons Road improvements;

- The Town made no individualized determination that this condition was related in nature and extent to the impact of the Subdivision on the Town's roadway system;

- Stafford's request for an exception to the plat approval condition was denied, Stafford paid for 100% of the improvements, and it was not reimbursed for any part of the cost of the improvements, despite its repeated requests to the Town for reimbursement;

- The Town's actions constituted a taking of Stafford's property for a public use without adequate compensation, in violation of article I, section 17 of the Texas Constitution and the *Dolan* proportionality requirement; and

- Stafford sought a judgment against the Town for a sum within the trial court's jurisdiction for the taking of Stafford's property.

■ The Town did not specially except to Stafford's pleadings, and the parties expressly agreed to a trial on Stafford's article I, section 17 takings claim. When a party fails to specially except, courts should construe the pleadings liberally in favor of the pleader. *See Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897. Applying all of these principles, we hold that the allegations in Stafford's pleadings were sufficient to plead the taking of its property under the Texas Constitution. We overrule the part of the Town's third issue that contends the *Dolan* test does not apply to a takings claim under the Texas Constitution and that

Stafford did not plead a taking of its property under the Texas Constitution.

## VII. Taking Without Adequate Compensation.

■ In its first, third, and fourth issues, the Town asserts the trial court erred by concluding that a taking occurred because Stafford failed to establish a taking under the *Dolan* test. The Town argues that Stafford presented no evidence that the Simmons Road improvements condition did not substantially advance a legitimate governmental interest and that no evidence exists that the Simmons Road improvements were not roughly proportional to the nature and extent of the Subdivision. As we have previously discussed, an adjudicative development exaction effects a taking when it *either* fails to substantially advance a legitimate governmental interest (*Nollan*), *or* when it is not roughly proportional to the public consequences created by the proposed development (*Dolan*). *See Dolan*, 512 U.S. at 386, 114 S.Ct. at 2317; *Nollan*, 483 U.S. at 836, 107 S.Ct. at 3148.

### A. Burden of Proof.

■ The burden of proof usually rests on the party challenging a land-use regulation. *See Dolan*, 512 U.S. at 391 n. 8, 114 S.Ct. at 2320 n. 8; *City of College Station*, 680 S.W.2d at 806–07. However, where, as here, a city makes an adjudicative decision to condition development of an individual parcel of land on the exaction of certain benefits from the developer, the burden of proof rests on the city. *See Dolan*, 512 U.S. at 391 n. 8, 114 S.Ct. at 2320 n. 8. Consequently, the Town bore the burden of proving that the Simmons Road improvements condition satisfied the two-pronged *Dolan* test.

### B. Application of The *Dolan* Test to the Present Facts.

## 1. Essential Nexus.

In examining an exaction takings challenge, the reviewing court must first determine whether an essential nexus exists between the legitimate state interest impacted by the landowner's proposed land use and the concession exacted from the landowner. *Dolan,* 512 U.S. at 386, 114 S.Ct. at 2317; *Nollan,* 483 U.S. at 836, 107 S.Ct. at 3148. Stafford contends that no nexus exists between the Simmons Road improvements condition and the identified state interests sought to be addressed by the improvements.

We begin by determining whether a legitimate state interest is at issue here. When the Town imposed the condition to plat approval, Simmons Road was a two-lane asphalt road in good repair that had been constructed within the previous twelve months. Stafford was required to demolish the existing two-lane asphalt road and to replace it with a two-lane cement road with three-foot shoulders. At trial, the Town offered the following justifications for imposing the Simmons Road improvements condition: better sight distances for drivers along Simmons Road, which would allow traffic entering and exiting the Subdivision to have more time to see approaching vehicles; an additional degree of safety provided by the shoulders; safer access points for drivers along Simmons Road; better traffic flow along Simmons Road; and long-term durability that would increase the life expectancy of the road and reduce the necessity for and cost of repairs. Thus, the Town asserted two purported legitimate state interests: safety on, and durability of, Simmons Road.

It is undisputed that the Subdivision would generate additional traffic on and around Simmons Road. Stafford's expert testified that the Subdivision would generate about 750 vehicle trips per day. The Town's expert, Terry Morgan, explained that the Town required the first developer in an area to make all the improvements to an abutting roadway because the increase in traffic caused by the development raised immediate safety concerns. Morgan admitted, however, that except for long-term durability, these objectives could have been accomplished just as effectively by improving the existing asphalt road rather than by demolishing it and replacing it with a concrete road. He also conceded that the long-term durability requirement was not intended to address immediate safety concerns, but another of the Town's experts testified that concrete was required because it was more durable than asphalt, so that fewer road repairs would be necessary.

We believe protecting the public—both residents and nonresidents of the Subdivision—from the dangers created by increased traffic on a public road due to the development of the Subdivision is a legitimate state interest. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. § 211.004 (Vernon 1999) (providing that zoning regulations must be designed to lessen street congestion and promote the general welfare); *id.* § 212.010 (providing for plat approval if plat conforms to municipality's plan for current and future streets and plan for the extension of municipality and its roads, streets, and public highways); TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(3)-(4) (Vernon Supp.2002) (providing that street construction and maintenance are among governmental functions of a municipality); *see also Mayhew,* 964 S.W.2d at 934 (noting that protecting residents from the ill effects of urbanization is a legitimate state interest). We also believe that the Town possesses a legitimate state interest in the durability of its roads. By providing longer lasting public roads, the Town reduces

the necessity for and costs of repairs.[16]

We next address whether the Simmons Road improvement condition bears an essential nexus with these two legitimate state interests expressed by the Town. *See Nollan*, 483 U.S. at 837, 107 S.Ct. at 3148. We hold that an essential nexus exists between the Town's expressed legitimate state safety interests and the condition to plat approval because shoulders on roads, better sight distances, safer driver access points, and the capacity for better traffic flow are all measures designed to improve safety on Simmons Road. Indeed, Stafford does not contend these improvements would not increase public safety, but only complains that they should have been asphalt rather than concrete.

Stafford asserts, however, that the demolish-and-repave-with-concrete portion of the Simmons Road improvements condition bears no essential nexus to any legitimate state interest. In *Nollan*, Justice Scalia explained that when the government's land-use regulation is conditioned on an unrelated exaction, the only purpose for the otherwise legitimate land-use regulation is to obtain from the landowner a desired extraction or concession that the government would otherwise be required to pay for. *Nollan*, 483 U.S. at 837, 107 S.Ct. at 3148–49. Thus, if the condition substituted for the land-use prohibition "utterly fails" to further the end advanced as the justification for the prohibition, a taking has occurred. *Id.* Overlaying Justice Scalia's analysis on the present facts, we must determine whether the Town's demolish-and-repave-with-concrete Simmons Road improvement condition "utterly fails" to further the end advanced by the Town (durability of its roads) as the justifi-

cation for denying Subdivision plat approval unless this condition was met. We cannot say that the demolish-and-repave-with-concrete aspect of the Simmons Road improvement condition to plat approval "utterly fails" to advance the legitimate state interest of road durability. Thus, we hold that the demolish-and-repave-with-concrete aspect of the Simmons Road improvement condition satisfies the first, essential nexus prong of the *Dolan* test.

**2. Rough Proportionality.**

We must now determine whether the degree of the Simmons Road improvements—both the requirement of the improvements and the requirement that they be concrete rather than asphalt—bears the required relationship to the projected impact of the Subdivision on the Town's roadway system, specifically Simmons Road. *See Dolan*, 512 U.S. at 377, 114 S.Ct. at 2312. To satisfy this prong of the *Dolan* test, the Town must demonstrate that it made some sort of individualized determination that the required Simmons Road improvements were related in both nature and extent, i.e., roughly proportional, to the impact of the Subdivision on Simmons Road. *See id.* at 391, 114 S.Ct. at 2319–20.

Stafford contends that the Town was required to make this individualized determination *before* imposing the improvements as a condition to plat approval. The Town's expert also testified that *Dolan* requires such a determination before issuance of the exaction. The parties stipulated that the Town made no individualized determination that its requirement for construction of the Simmons Road improvements was "roughly proportional" to the impact of Phases II and III upon the

---

**16.** One of Stafford's experts testified that asphalt mixed with certain crushed materials has a greater life expectancy than concrete if the concrete has to be repaired. But there is no evidence that the asphalt originally used to construct Simmons Road was the stronger type of asphalt.

Town's roadway system before requiring Stafford to construct the improvements and bear 100% of the construction cost.

The *Dolan* opinion states simply that "the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.* We question how a municipality could determine that a development exaction would pass constitutional muster without first engaging in some sort of pre-exaction analysis. Nonetheless, the *Dolan* court did not indicate that failure to make a rough proportionality analysis before imposing a development exaction was, alone, fatal to the constitutionality of the exaction, and at least one court has afforded a municipality a postexaction opportunity to justify the exaction under the rough proportionality standard. *See Ehrlich*, 50 Cal. Rptr.2d 242, 911 P.2d at 433 (remanding cause for additional proceedings "[b]ecause the city may be able to justify the imposition of *some* fee under the recently minted standard of *Dolan* "). Accordingly, we decline to hold that the timing of a city's individualized determination is dispositive of a takings claim governed by the *Dolan* test. Instead, we will consider whether the Town established in the trial court that the Simmons Road improvements were in substance roughly proportional to the impact, or negative public consequences, of the Subdivision.

To make this determination, we must first consider the projected impact of the Subdivision on the Town's roadway system, specifically Simmons Road. Stafford put on evidence concerning the increases in traffic that would be generated by the Subdivision. One of Stafford's experts testified that a traffic study was prepared in the manner uniformly accepted by traffic industry professionals and that he had rechecked the study to confirm the accuracy of the study's trip calculations. Stafford's traffic study evidence showed that the Subdivision would produce about 750 vehicle trips per day, or about 18% of the total average traffic on the improved portion of Simmons Road. Stafford's evidence also showed that the Subdivision would generate approximately 21% of the traffic on an affected portion of McKamy Creek Road and another 4% of the traffic on a different portion of Simmons Road. Moreover, it is reasonable to assume that traffic increases caused by a development would be heaviest near the development itself, so that the Subdivision would not generate a larger percentage of traffic elsewhere in the Town.

The Town did not put on any evidence to show how much additional roadway traffic the Subdivision would create. Terry Morgan, the Town's expert, did testify, however, that the Town had assessed—but not collected—maximum road impact fees against the Subdivision based on a mathematical estimate of the amount of impact each dwelling unit of the Subdivision would have on the Town's roads. The mathematical formula for this estimate was contained in the Town's road impact fee ordinance. Morgan opined that the maximum amount of road impact fees that could be assessed against the Subdivision could be used to determine whether the improvements condition was roughly proportional to the impact the Subdivision would have on the Town's roadway system.

Morgan testified that the maximum amount of impact fees assessed against the Subdivision under the Town's road impact fee ordinance was about $3,560 per dwelling unit. Morgan also testified, and the parties stipulated, that Stafford had already paid road impact fees of $1,140 per lot for each of the 247 lots in Phases I, II, and III of the Subdivision. The record shows that section (f) of the Town's road

impact fee ordinance set the maximum amount of fees that could be *assessed* under the ordinance against a single-family dwelling at $3,559.65.[17] Section (g) of the ordinance set the maximum amount of fees that could be *collected* for a single-family dwelling at $1,140.[18] *See* Tex. Loc. Gov't Code Ann. § 395.016(d) (Vernon 1999) (providing that a city must *assess* impact fees before or at the time of recordation of a subdivision plat, but may *collect* the fees when the plat is recorded, when the development is connected to water or sewer services, or when a building permit or certificate of occupancy is issued).

Stafford put on evidence, and the parties stipulated on the record during the damages trial, that the Simmons Road improvements cost $484,303.79. Morgan testified that the maximum road impact fees assessed against the Subdivision under the road impact fee ordinance was approximately $879,000[19] and that the Town had collected about $280,000, the maximum collectible amount, from Stafford in impact fees.[20] Morgan opined that the approximately $600,000 difference between the amount assessed and the amount collected could be used to measure the effect of the Subdivision's impact on the Town's roads and that this amount was roughly proportional to the amount of money Stafford had paid to construct the Simmons Road improvements.

We decline to adopt the Town's position that the formula of maximum assessable impact fees minus legally collectible impact fees equals the impact of the development for purposes of the *Dolan* test's rough proportionality prong. An impact fee may only be imposed to pay the cost of constructing the capital improvements or facility expansions that are identified in a city's capital improvements plan. *See* Tex. Loc. Gov't Code Ann. §§ 395.012(a), 395.013(1) (Vernon 1999). A municipality is prohibited from using impact fees to construct or expand capital improvements not identified in the city's capital improvements plan. *See id.* § 359.013(1). The parties stipulated that Simmons Road is not on the Town's impact fee capital improvements plan. The Town's maximum assessable impact fees minus legally collectible impact fees formula improperly converts noncollectible impact fees into a measurement justifying an equal amount of improvements not on the Town's capital improvements plan.

Moreover, the effect of the Town's formula would be to require Stafford to improve Simmons Road because of the projected impact the Subdivision will have on the need for constructing or upgrading *other* roads in the Town that *are* on its capital improvements plan. A development exaction must be sufficiently connected to the projected impact of the development. *Dolan*, 512 U.S. at 377, 391, 114 S.Ct. at 2312, 2319–20. Stated another way, the exaction must be designed to rectify adverse public consequences generated by the development itself. We fail to grasp how requiring a developer to im-

---

**17.** $1,249 per service unit × 2.85 service units per dwelling unit.

**18.** 2.85 service units × $400 per service unit. Section (f) of the town's impact fee ordinance provides:

> (f) Fee Assessment. Road impact fees shall be *assessed* at the maximum impact fee per service unit for each service area. Road impact fees shall be *collected* at the impact

fee per service unit for each service area established in Section (g), Fee Calculation, which shall be less than or equal to the maximum impact fee per service unit. [Emphasis added.]

**19.** 247 lots × $3,559.65 per lot = $879,233.55.

**20.** 247 lots × $1,140 per lot = $281,580.

prove an existing road that is *not* on a city's capital improvements plan is in any way related to the impact a development will have on roads that *are* on the city's capital improvements plan. Thus, we decline to adopt the Town's proposed formula in determining whether the Town satisfied the second, rough proportionality prong of the *Dolan* test.

■ On this record, the Town has not met its burden of demonstrating that the additional traffic generated by the Subdivision bears a sufficient relationship to the requirement that Stafford demolish a nearly new, two-lane asphalt road that was not in disrepair and replace it with a two-lane concrete road. Undoubtedly, the additional traffic (750 trips per day) generated by the Subdivision will increase wear and tear and create additional safety concerns on the Town's roads and Simmons and McKamy Creek Roads in particular. But the Town has not explained why demolishing the asphalt road and replacing it with a cement road, as opposed to improving the asphalt road, was required because of the Subdivision's impact. To the contrary, the Town's experts admitted that all of the Town's safety objectives could have been accomplished just as effectively by simply improving the asphalt road. The Town likewise has not explained how the Subdivision's impact created a specific need for a more durable surfacing of Simmons Road. Consequently, the Simmons Road improvement condition requiring Stafford to demolish a portion of Simmons Road, to repave it with concrete, and to bear 100% of the costs, fails the second, rough proportionality prong of the *Dolan* test.

The deficiency of this aspect of the Simmons Road improvements condition under the rough proportionality standard is aptly demonstrated by a review of *Dolan* itself. One of the legitimate governmental interests in *Dolan* was controlling flood haz-

ards. Dolan, a store owner, applied for a building permit to double the size of her store and to increase the size of her gravel parking lot and pave it. The city conditioned the granting of the permit on Dolan dedicating to the city as a greenway (1) all portions of her property within the 100 year floodplain and (2) all property fifteen feet above the floodplain boundary, this latter portion to be used as a public pedestrian and bicycle path. *Dolan*, 512 U.S. at 379–80, 388, 114 S.Ct. at 2313–14, 2318. The Supreme Court held that while paving a business's parking lot would certainly increase water run-off into the city's floodplain, the city could have achieved its legitimate governmental interest of flood control with a less invasive measure than requiring Dolan to dedicate some of her property for a public greenway. *Id.* at 392–93, 114 S.Ct. at 2320. The Court stated: "The city has never said why a public greenway, as opposed to a private one, was required in the interest of flood control." *Id.* at 393, 114 S.Ct. at 2320. Likewise in this case, while the Town could have required Stafford to improve Simmons Road to address the safety concerns generated by traffic from the Subdivision, the Town has not explained why more expensive concrete improvements, as opposed to asphalt ones, were required in the interest of the safety concerns generated by the Subdivision.

Additionally, the Town has not explained how the public consequences of the Subdivision necessitate that Simmons Road be paved with concrete. The Town did not put on any evidence that 750 additional trips per day would increase the wear and tear on an asphalt road to any significantly greater degree than on a concrete road. The Town's expert merely testified that it was his "experience" that concrete had a longer life expectancy than asphalt. The expert also admitted that whether concrete would be more durable would depend on

the type of repairs needed on the road. Although no precise mathematical calculation is required, a city must make some effort to quantify its findings in support of the exaction. *See id.* at 395–96, 114 S.Ct. at 2321–22 (holding that city must make some effort to quantify its findings in support of dedication beyond the conclusory statement that dedication "could" offset some of the traffic demand generated). We also hold that the demolish-and-replace-with-concrete aspect of the Simmons Road improvement condition is not sufficiently related to or roughly proportional with the traffic increases caused by the Subdivision.

In summary, the Town's requirement that Stafford tear up a nearly new two-lane asphalt road—that could be improved with asphalt to address the Town's legitimate safety concerns—and replace it with a two-lane concrete road bears little or no relationship to the proposed impact of the Subdivision on the Town's roadway system, specifically Simmons Road. While the Town's interest in the durability of its roads is a legitimate interest, the demolish-and-replace-with-concrete aspect of the Simmons Road improvements condition simply bears no relationship to the public consequences generated by the Subdivision and is not roughly proportional to the traffic impact of the Subdivision on Simmons Road. Accordingly, this condition to plat approval does not meet the *Dolan* test's rough-proportionality requirement and instead effected a taking without adequate compensation under article I, section 17 of the Texas Constitution. We overrule the Town's fourth issue and the remainder of its first and third issues.

## VIII. Measure of Damages.

■ The parties stipulated at trial that the Simmons Road improvements cost $484,303.79. The trial court awarded Stafford $425,426.00 in damages, or 87.8% of the total cost of the improvements.[21] In its seventh issue, the Town contends that the trial court erred in awarding this amount of damages to Stafford because the court failed to consider the impact of the Simmons Road improvements on the value of the entire Subdivision.

■ To support its position, the Town relies on the nonsegmentation principle, which requires a reviewing court to refrain from dividing a single parcel of property into discrete segments and attempting to determine whether rights in a particular segment have been entirely abrogated. *See Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 130–31, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978). Instead, where part of a land owner's property is allegedly "taken," the effect of the regulation must be viewed with respect to the impact on the property as a whole to determine whether a taking has actually occurred. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497–98, 107 S.Ct. 1232, 1248–49, 94 L.Ed.2d 472 (1987); *City of Annapolis v. Waterman*, 357 Md. 484, 745 A.2d 1000, 1025 (2000). *But see Palazzolo v. R.I.*, 533 U.S. 606, 631, 121 S.Ct. 2448, 2465, 150 L.Ed.2d 592 (2001) (expressing discomfort with this legal principle, but declining to explore issue). In Texas, this legal principle is used to determine damages in eminent domain cases. *See* TEX. PROP.CODE ANN. §§ 21.041–

21. Stafford contends in its cross-point that it should recover 100% of the cost of the Simmons Road improvements from the Town because the Town has failed to establish an essential nexus between the improvements and the governmental interest the Town was attempting to advance. Because we have determined that the Town did satisfy the first prong of the *Dolan* test—the existence of an essential nexus between the exaction and its legitimate safety and road durability interests—we overrule Stafford's cross-point.

.042(c) (Vernon 2000) (providing that, in eminent domain cases where portion of tract is condemned, owner's damages are determined by estimating extent of resulting injury and benefit to property owner, including effect of condemnation on value of owner's remaining property); *Haynes v. City of Abilene*, 659 S.W.2d 638, 641 (Tex. 1983) (providing that, in eminent domain cases where only portion of larger tract is taken for public purpose, compensation for damage to remainder will be offset by amount of special benefits conferred on remaining portion by virtue of the public works). In this case, however, no land within the Subdivision was "taken." Accordingly, we do not believe the measure of damages used in eminent domain cases involving the taking of land is readily applicable to this situation.

██ At least one court has held, that when a developer is forced to fund 100% of a public improvement as a development exaction, if the exaction is determined to be an unconstitutional taking, the developer is entitled to recoup its expenditures in excess of its pro rata share of the public improvement. *See Christopher Lake Dev. Co.*, 35 F.3d at 1275 (holding that developer that was required to provide water drainage system for entire watershed area was entitled to recoup its expenditures in excess of its pro rata share of drainage system). Relying on this case, Stafford asserts that the measure of damages is at least the percentage of construction costs

it paid for the Simmons Road improvements in excess of the percentage of the use of Simmons Road generated by the Subdivision.[22]

Despite the numerous cases and law review articles interpreting and applying the *Dolan* test, courts and legal commentators have written very little on the appropriate measure of damages when a taking occurs under the *Dolan* test. Although the *Christopher Lake Development Co.* opinion does not provide any analysis or legal authority to support its holding as to the measure of damages, the concept that damages from a purely monetary or offsite public improvements development exaction equals the amount paid by the developer in excess of any amount that would satisfy *Dolan's* rough-proportionality requirement is logical. Conversely, that portion of a monetary or offsite public improvements exaction that is approximately attributable to the public consequences of the development does not constitute a taking.

The Town's position that the effect of the Simmons Road improvements on the value of the entire Subdivision should be considered is also persuasive. Historically, courts have allowed recovery of damages when the exaction of the cost of a public improvement against a property owner has exceeded the value of the special benefits the improvement confers on the owner's property. In *Village of Norwood*, the United States Supreme Court

---

**22.** Although the Town bore the initial burden of establishing the rough proportionality of its exaction, once the trial court determined that a taking had occurred, then Stafford bore the burden of proving its damages. *Accord Domel v. City of Georgetown*, 6 S.W.3d 349, 357 (Tex.App.-Austin 1999, pet. denied) (recognizing that the elements of a takings case under the Texas Constitution are (1) an intentional act of a governmental entity; (2) accomplished for a public purpose; (3) that damages or takes property from a private citizen).

Stafford, however, did not segregate its damages evidence concerning asphalt-improvements-only costs versus demolish-and-repave-with-concrete costs. Therefore, Stafford is limited to recouping demolish-and-repave-with-concrete costs in excess of those roughly proportional to the impact of the Subdivision traffic even though application of the rough-proportionality standard to asphalt-improvements-only costs could have resulted in greater recovery to Stafford.

held: "[T]he exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking ... of private property for public use without compensation." 172 U.S. at 279, 19 S.Ct. at 191; *accord Hutcheson,* 51 S.W. at 850; *see also Haynes,* 659 S.W.2d at 641 (recognizing that city's power to assess against plaintiffs' property for public improvements was restricted to amount of special benefits conferred by the improvements).

■ We hold that the appropriate measure of damages in this *Dolan* takings case is the amount paid by Stafford for the Simmons Road improvements in excess of any amount roughly proportional to the impact of the Subdivision on the Town's roadway system, specifically Simmons Road. *See Christopher Lake Dev. Co.,* 35 F.3d at 1275. We also hold that to the extent the Town proved special benefits accrued to the Subdivision as a result of the Simmons Road improvements, it was entitled to an offset of those amounts against damages owed to Stafford. *See Village of Norwood,* 172 U.S. at 279, 19 S.Ct. at 191.

## IX. Evidence of Costs in Excess of Rough Proportionality and Evidence of Special Benefits.

As previously mentioned, the parties stipulated that the Simmons Road improvements cost $484,303.79. The trial court awarded Stafford $425,426.00 in damages, or 87.8% of the total cost of the improvements. Consequently, the trial court required Stafford to pay for 12.2% of the cost of the Simmons Road improvements.

Stafford's traffic study established that the Subdivision would generate about 18% of the total average traffic on the improved portion of Simmons Road, approximately 21% of the traffic on an affected portion of McKamy Creek Road, and another 4% of the traffic on a different portion of Simmons Road. These percentages added together and divided by three provide an average of 14.3% of traffic attributable to the Subdivision. No precise mathematical formula is necessary; thus, the trial court's conclusion that approximately 12.2% of the total Simmons Road improvements costs was roughly proportional to the impact of the Subdivision constituted a correct application of the *Dolan* rough-proportionality standard under the facts of this case.

■ We turn now to the Town's argument that the trial court should have considered the benefits the Simmons Road improvements conferred on the Subdivision to reduce Stafford's damages award. A special benefit is one that benefits the property directly and is not commonly shared by the community as a whole. *See Taub v. City of Deer Park,* 882 S.W.2d 824, 828 (Tex.1994), *cert. denied,* 513 U.S. 1112, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995); *Haynes,* 659 S.W.2d at 641–42; *see also* TEX. PROP.CODE. ANN. § 21.042(d) (Vernon 2000) (providing that evidence of benefit that is peculiar to property owner and that relates to property owner's ownership, use, or enjoyment of affected parcel of property may be considered in assessing damages in eminent domain cases, but evidence of benefit that owner experiences in common with the general community may not be considered).

■ Whether a land owner's property has been enhanced by special benefits is a question of fact. *See City of Dallas v. Firestone Tire & Rubber Co.,* 66 S.W.2d 729, 732 (Tex.Civ.App.-Dallas 1933, writ ref'd); *City of Mart v. Hasse,* 281 S.W. 318, 320–21 (Tex.Civ.App.-Waco 1926, writ dism'd w.o.j.). In eminent domain cases,

courts have held that the condemning party bears the burden of showing the extent to which special benefits affect the uncondemned portion of the land. *See, e.g., City of Mart*, 281 S.W. at 320–21 (holding that, in eminent domain proceeding, land owner had burden of proving value of condemned property and decrease in value, if any, on remainder, but condemning party had burden of proving any increase in value to remainder arising from condemnation); *Hopkins County Levee Imp. Dist. v. Hooten*, 252 S.W. 325, 326 (Tex.Civ.App.-Texarkana 1923, no writ) ("It rests upon the condemning party to show what special benefits will accrue to the owner, and the extent to which such benefits. affect the remaining portion of the land, as a set-off to the damages to the remaining land.")

The Town's experts testified that the Subdivision would benefit from the enhanced appearance of the road and from the convenience and safety afforded by the better sight distances and the three-foot shoulders. One expert also testified that the improvements to Simmons Road would cause traffic to drive on Simmons Road instead of cutting through the Subdivision, thereby reducing the amount and speed of traffic within the Subdivision itself. This evidence may constitute some evidence that the Subdivision specially benefitted from the Simmons Road improvements.[23] However, the Town failed to quantify in any way the dollar value of these purported benefits to the Subdivision. Therefore, while we agree with the Town that it should be entitled to have Stafford's damages award reduced or offset by any special benefits conferred on the Subdivision by the Simmons Road improvements, we hold that because the Town failed to quantify these purported benefits in this case, the trial court did not err in awarding Stafford $425,426.00 in damages.

Applying the traditional no-evidence and factually insufficient evidence standards of review articulated previously, we hold that the evidence presented in this case and outlined above is both legally and factually sufficient to support the trial court's damages award. We overrule the Town's seventh issue.

## X. Attorney's Fees and Expert Witness Fees.

United States Code section 1988 provides: "In any action or proceeding to enforce a provision of section … 1983 … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. …" 42 U.S.C.A. § 1988(b) (West Supp.2001). In awarding attorney's fees under section 1988(b), the court, in its discretion, may include expert fees as a part of the attorney's fees award. *Id.* § 1988(c). Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the

---

**23.** The Town contends the trial court erred by failing to consider the benefits Stafford received in cost savings by using common equipment and manpower for both the Simmons Road improvements and the Subdivision's internal roads, quantity discounts on materials, and reduction on planning, engineering, design, and permitting costs per acre of land developed. Even assuming these types of cost savings are relevant to a special benefits analysis, the Town does not direct us to any evidence of such savings in the record. The Town's expert merely opined that there was "actual or potential cost savings" from these measures and made conclusory statements about the savings in his report. An expert's conclusory opinions are not evidence. *See In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 74 (Tex.1998) (orig.proceeding).

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

*Id.* § 1983.

Stafford contended in its pleadings that the Simmons Road improvements condition was a taking without compensation under section 1983, as well as the Fifth Amendment and article I, section 17 of the Texas Constitution, and requested attorney's fees and expert witness fees under section 1988. The trial court concluded that Stafford was entitled to recover attorney's fees and expert witness fees under section 1988. The court awarded Stafford $20,000 in expert witness fees, $175,000 in trial attorney's fees, $2,500 in attorney's fees if the Town filed an unsuccessful motion for new trial, and $15,000 if Stafford prevailed on appeal in the court of appeals.

In its sixth issue, the Town contends the trial court erred in awarding Stafford attorney's and expert witness fees. In its second and sixth issues, the Town contends that Stafford's federal claims were not ripe for adjudication and that Stafford is not entitled to attorney's fees unless it prevailed on one of its federal claims.

 The ripeness doctrine applies in situations where a property owner complains that action by a state entity, as opposed to a federal one, has resulted in a taking without just compensation under the Fifth Amendment. There are two independent hurdles to a Fifth Amendment takings claim against a state entity. *Suitum v. Tahoe Reg'l Planning Agency*, 520

U.S. 725, 733–34, 117 S.Ct. 1659, 1664, 137 L.Ed.2d 980 (1997). First, the property owner must demonstrate that it has received a final decision regarding the application of the challenged regulation to the property at issue from the governmental entity charged with implementing the regulation. *Id.* at 734, 117 S.Ct. at 1665; *see also Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985). Second, if a state provides an adequate procedure for seeking just compensation, the property owner must show that it has used that procedure and been denied just compensation.[24] *Suitum*, 520 U.S. at 734, 117 S.Ct. at 1665; *Williamson County Reg'l Planning Comm'n*, 473 U.S. at 194–95, 105 S.Ct. at 3120–21. Only the second hurdle is at issue here.[25]

 The rationale for this second hurdle is that the federal constitution does not require pretaking compensation by the states, but instead is satisfied by a reasonable and adequate compensation after the taking. *Williamson County Reg'l Planning Comm'n*, 473 U.S. at 195, 105 S.Ct. at 3121. Thus, the state's action is not "complete" in the sense of causing a federal constitutional injury until the state fails to provide adequate compensation for the taking. *Id.* Put another way, there is no taking without just compensation by a state government, in violation of the Fifth Amendment, if the state adequately compensates the aggrieved party for the taking based on a state-law remedy.

 Further, a property owner must use available state procedures to

---

**24.** Some commentators argue that this second hurdle is not a "ripeness" hurdle at all, but instead is more accurately termed a "state compensation requirement." See Douglas T. Kendall, et al., *Choice of Forum and Finality Ripeness: The Unappreciated Hot Topics in Regulatory Takings Cases*, 33 URB. LAW. 405,

408–09 (2001). Regardless of the terminology, it is this requirement that is at issue here.

**25.** Stafford relies heavily on the Texas Supreme Court's opinion in *Mayhew*, which only addresses the first ripeness hurdle. 964 S.W.2d at 929–32.

seek compensation before the owner may bring a section 1983 takings claim. *John Corp. v. City of Houston*, 214 F.3d 573, 581 (5th Cir.2000); *see also Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (reiterating that section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred"). The owner is not precluded from asserting both state and federal takings claims in the same lawsuit, *see Guetersloh v. State*, 930 S.W.2d 284, 287–88 (Tex.App.-Austin 1996, writ denied), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998), but the federal claim remains unripe unless and until the owner unsuccessfully seeks to recover just compensation under state law. *John Corp.*, 214 F.3d at 581; *Guetersloh*, 930 S.W.2d at 287–88.

In this case, the Texas Constitution affords Stafford just compensation for the taking that occurred when Stafford was required to construct the Simmons Road improvements as a condition to plat approval, and Stafford has prevailed on its state-law takings claim. Accordingly, the Town's action of taking Stafford's property through the plat approval condition is not complete and has not caused a federal constitutional injury.

Because Stafford is afforded just compensation based on its state-law takings claim, its federal claims under the Fifth Amendment and section 1983 will never mature. Consequently, the trial court erred by granting Stafford relief on its federal claims. Moreover, Stafford is not a prevailing party on its section 1983 claim

for purposes of the attorney's fee award under section 1988. *See Eberle v. Dane County Bd. of Adjust.*, 227 Wis.2d 609, 595 N.W.2d 730, 746 (1999) (stating that plaintiffs who had asserted regulatory takings claim under both state and federal constitutions had to prevail on *ripe* federal takings claim to recover attorney's fees under section 1988); *see also Sharp v. Direct Resources for Print, Inc.*, 910 S.W.2d 535, 541 (Tex.App.-Austin 1995, writ denied) (holding that, where trial court awarded section 1983 plaintiff refund of sales taxes paid under protest, and refund was based on state law, plaintiff received an adequate remedy under state law and was not entitled to relief on its equal protection claim under section 1983 or attorney's fees under section 1988); *City of Grand Prairie v. Sisters of Holy Family*, 868 S.W.2d 835, 844–45 (Tex.App.-Dallas 1993, writ denied) (op. on reh'g) (holding that even unconstitutional paving-assessment ordinance did not entitle section 1983 plaintiff to damages and attorney's fees for federal constitutional violations because plaintiff did not show inadequacy of state remedies to redress its alleged loss), *cert. denied*, 513 U.S. 929, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994); *Or. State Police Officers Ass'n v. State*, 308 Or. 531, 783 P.2d 7, 10–11 & n. 8 (1989) (holding that, where state remedies were adequate to protect plaintiffs' rights, state did not deny plaintiffs any federal constitutional rights, and attorney's fees under section 1988 were not available), *cert. denied*, 498 U.S. 810, 111 S.Ct. 44, 112 L.Ed.2d 20 (1990).[26]

Stafford contends that attorney's fees are available under section 1988 even

---

**26.** We recognize that, in *City of Arlington v. Byrd*, we affirmed a section 1988 attorney's fee award to a property owner who successfully sued to overturn a paving assessment as a taking under the Fifth Amendment. 713 S.W.2d 224, 228–29 (Tex.App.-Fort Worth 1986, writ ref'd n.r.e.), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3213, 96 L.Ed.2d 700 (1987). But the issue of whether the owner's Fifth Amendment claim was ripe was not raised; thus, our decision in *City of Arlington* does not support the fee award in this case where the ripeness of Stafford's federal claim is specifically challenged.

where a federal claim is never reached if the plaintiff prevails on a pendent state-law claim that is based on the same nucleus of operative facts as the federal claim. *See, e.g., Williams v. Thomas,* 692 F.2d 1032, 1036 (5th Cir.1982) (holding that plaintiff was "prevailing party" for section 1988 purposes where plaintiff asserted both section 1983 claim and state-law assault and battery claim arising out of same nucleus of operative fact, but only prevailed on assault and battery claim), *cert. denied,* 462 U.S. 1133, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983); *City of Fort Gates v. Cathey,* 665 S.W.2d 586, 588–89 (Tex.App.-Waco 1984, writ ref'd n.r.e.) (holding that plaintiff was "prevailing party" where she alleged civil rights violations of use of excessive force and arrest without probable cause and state-law claims for grossly negligent hiring, supervision, and training of police officers, but prevailed only on some of her gross negligence claims); *see also Maher v. Gagne,* 448 U.S. 122, 132 n. 15, 100 S.Ct. 2570, 2576 n. 15, 65 L.Ed.2d 653 (1980) (noting that where both non-fee-generating federal statutory claim and fee-generating federal constitutional claims arise out of common nucleus of operative fact, plaintiff may be considered prevailing party if constitutional claim is sufficiently substantial to support invocation of federal jurisdiction).

Indeed, Congress's purpose in authorizing an attorney's fee award under section 1988 for an unaddressed constitutional claim was to avoid penalizing a litigant for the fact that courts are properly reluctant to resolve constitutional questions if a non-constitutional claim is dispositive. *Smith v. Robinson,* 468 U.S. 992, 1007, 104 S.Ct. 3457, 3466, 82 L.Ed.2d 746 (1984); *McDonald v. Doe,* 748 F.2d 1055, 1056 (5th Cir.1984). Nonetheless,

> [t]hat purpose does not alter the requirement that a claim for which fees are awarded be reasonably related to the plaintiff's ultimate success. It simply authorizes a [trial] court to assume that the plaintiff has prevailed on his fee-generating claim and to award fees appropriate to that success.

*Smith,* 468 U.S. at 1007, 104 S.Ct. at 3466.

In this case, the only claims Stafford asserted against the Town were takings claims under the Texas Constitution, the Fifth Amendment, and section 1983. Thus, a nonconstitutional state-law claim is not dispositive of Stafford's federal claims. In addition, we cannot presume that Stafford has prevailed on its fee-generating claim: its Fifth Amendment takings claim, also pleaded as a violation of section 1983. To the contrary, Stafford is prevented from even prosecuting this fee-generating claim due to the fact that an adequate state procedure is available and has afforded Stafford just compensation.

Stafford also contends that the ripeness doctrine does not apply when the property owner's claim is that the governmental action does not substantially advance a legitimate state interest or that the governmental action resulted in a denial of substantive due process. The cases Stafford cites, however, hold only that the ripeness doctrine does not apply to *facial* takings claims that complain a land use regulation fails to substantially advance a legitimate state interest. *See, e.g., San Remo Hotel v. City & County of San Francisco,* 145 F.3d 1095, 1102 (9th Cir. 1998); *Sinclair Oil Corp. v. County of Santa Barbara,* 96 F.3d 401, 405–06 (9th Cir.1996), *cert. denied,* 523 U.S. 1059, 118 S.Ct. 1386, 140 L.Ed.2d 646 (1998). These same cases hold that the ripeness doctrine does apply to a claim that a land-use regulation, as applied, violates the Fifth Amendment's takings clause. *San Remo Hotel,* 145 F.3d at 1102; *Sinclair Oil Corp.,* 96 F.3d at 405–06. Stafford did not

contend in its pleadings that section 4.04(*o*) of the Town's land development code was facially unconstitutional because it failed to substantially advance a legitimate state interest. Instead, Stafford pleaded that section 4.04(*o*), as applied to Stafford's development of the Subdivision, violated the Fifth Amendment. Consequently, the ripeness doctrine applies to Stafford's takings claim pursuant to the cases Stafford cites.

 In addition, Stafford did not assert a substantive due process claim in the trial court. Stafford simply pleaded that the Town's actions in applying section 4.04(*o*) were "a *taking* of Stafford's property for a public use without adequate compensation having been made. . . ." [Emphasis added.] The parties stipulated that the claims to be tried at the trial on liability were Stafford's *takings* claims under article I, section 17 of the Texas Constitution, the Fifth Amendment, and section 1983. Because Stafford did not assert a substantive due process claim in the trial court, it cannot assert one now. *See, e.g., Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex.1997) (op. on reh'g) (holding that complaint raised on appeal must be same as that presented in trial court).[27]

Further, because the parties stipulated that only Stafford's takings claims would be tried in the trial on liability, the trial court erred in concluding that the imposition of the Simmons Road improvements condition was a denial of substantive due process and resulted in an illegal tax. *See, e.g., Johnson v. Swain*, 787 S.W.2d 36, 38 (Tex.1989) (recognizing trial court should

enforce parties' stipulations even when result is unintended).

Because the Texas Constitution provides an adequate procedure for compensating Stafford for the taking that occurred when Stafford was required to construct the Simmons Road improvements as a condition to plat approval, and because Stafford has prevailed on its state-law takings claim, Stafford has not suffered a federal constitutional injury. Consequently, Stafford cannot prosecute its section 1983 takings claim or be a prevailing party under section 1988. Stafford pleaded no other basis for an attorney's fee or expert witness fee award. We sustain the Town's second issue and the portion of its sixth issue complaining of the attorney's fee and expert witness fee awards under section 1988 and hold that Stafford is not entitled to attorney's fees or expert witness fees under that section.

## XI. Conclusion.

We affirm the portion of the trial court's judgment awarding Stafford $425,426.00 in damages for the taking of its property exacted by the Simmons Road improvements condition. We reverse the trial court's award of attorney's fees and expert witness fees to Stafford under section 1988 of the United States Code and render judgment that Stafford is not entitled to recover attorney's fees or expert witness fees from the Town.

---

27. Even if the issue were properly before us, we question whether Stafford would be entitled to assert a substantive due process claim against the Town based on these facts. *See John Corp.*, 214 F.3d at 582 (noting that, if a constitutional claim is covered by a specific constitutional provision, the specific provision, "not the more generalized notion of 'substantive due process,'" must be used to assess the validity of the challenged action) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)).