COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-103-CV

 

 

RISCHON DEVELOPMENT CORP.                                            APPELLANT

 

                                                   V.

 

CITY OF KELLER                                                                    APPELLEE

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.                   
 Introduction








            This is a takings case. 
Appellant Rischon Development Corp. complains that the City of Keller
committed an unlawful taking under the Texas constitution by imposing certain
requirements on a residential development planned by Rischon.  The City contends that Rischon consented to
all of the requirements.  After a bench
trial, the trial court rendered a take-nothing judgment on Rischon=s claims against the City.  We affirm.

II.                
Background

The City of Keller is a home-rule municipality in
Tarrant County.  Rischon is a residential
land development company.  This dispute
concerns a tract of land within the City=s
limits that Rischon developed into the Rolling Wood subdivision.

The property in question comprises 19.37 acres,
all within the City.  The land includes
heavily wooded areas, hills, and a creek flowing through a ten-foot-deep ravine
along the only access road, Davis Boulevard. 
As a result, the land remained undeveloped from the time the City
annexed it in the 1960s.  Prior to
Rischon=s efforts
to develop the property, it was zoned for residential use with lots a minimum
of 36,000 square feet. 








In 1998Cbefore
it purchased the propertyCRischon
met with the City=s
development staff to discuss the general features of Rischon=s proposed development.  In December 1998, Rischon applied for
rezoning of the property as a planned developmentCin
other words, it sought zoning that would take into account the unique features
of the property with some freedom to propose variances from the usual ordinance
requirements.  Rischon asked the City to
approve a planned development zoning ordinance with the following requirements
and features:

 

1.         An entrance with wrought iron gates;

 

2.         A private subdivision with private streets built to City
standards but maintained by the residents of Rolling Wood through a homeowners
association;

 

3.         Wrought iron fencing along the front of the property with
chain-link fencing around the perimeter of the property;

 

4.         Reduction of the minimum lot size to 14,100 square feet;

 

5.         Construction of 0.9 miles of asphalt hike/bike trials
connecting all common areas;

 

6.         No internal sidewalks;

 

7.         Construction of a six-inch water line from Davis Boulevard
and tied into the an existing water line to the south of the property;

 

8.         Construction of a ten-inch offsite sewer line from the
Trinity River Authority sewer line to Rolling Wood;

 

9.         Construction of an eight-inch sanitary sewer line with
extensions to the southern corners of the property for future development;

 

10.       Construction of 480 feet of eight-inch sanitary sewer line
from the southeast corner of Rolling Wood to Bandit TrailCan adjacent, existing development not
then served by the City sewer systemCfor
which the City would reimburse all costs; and

 

11.       A private open-space area along the perimeter of the
development and surrounding a small pond to mitigate the effect of the smaller
lot sizes. 








On January 11, 1999, the City=s Planning and Zoning Commission
considered Rischon=s proposal.  A number of Keller residents testified in
opposition to the rezoning, particularly to rezoning the property for lot sizes
that were less than half the size of the existing classification.  The City fire chief recommended that the City
require fire sprinkler systems in the Rolling Wood residences because of the
restricted access to the neighborhood. 
City development staff recommended that, as per City ordinances, the
City require Rischon to build sidewalks along the interior streets and to
escrow the cost of the sidewalk along Davis Boulevard for future
construction.  Rischon consented to both
recommendations.   

The City Council considered Rischon=s zoning request on February 2,
1999.  Rischon did not object to City
staff=s
sidewalk and fire sprinkler recommendations. 
With those modifications, the Council approved Rischon=s application and rezoned Rolling Wood
with the following conditions:

1.         Installation of wrought iron fencing along Davis Boulevard
and the installation of perimeter fencing of a nature to be determined at the
preliminary plat stage;

 

2.         Escrow of the Davis Boulevard sidewalk funds;

 

3.         Construction of interior sidewalks;

 

4.         Development of hike and bike trails;

 








5.         Rischon to bear the entire cost of providing sanitary sewer
service to the development;

 

6.         Residential fire sprinklers in all dwelling units.

 

Rischon raised no objections to these requirements at the
February 2 City Council meeting. 

Rischon purchased the Rolling Wood property on
March 9, 1999, for $400,000. 

Rischon submitted a preliminary plat for the
Rolling Wood development, and the City=s
Planning and Zoning Commission reviewed the plat on April 12, 1999.  The plat included plans for construction of a
wrought iron fence along the entire perimeter of the development.  City staff recommended approval of the plat
subject to several changes, including a six-foot-high fence along Davis
Boulevard.  Rischon=s representative stated that the plat
would comply with the staff recommendations concerning the wrought iron
fence.  The Planning and Zoning
Commission approved the plat with the staff recommendations; again, Rischon did
not object. 








On December 22, 1999, Rischon=s president, John Hawkins,  advised the city by letter that he Adeemed it inappropriate that I should
bear the cost to extend@
the sanitary sewer to Bandit Trail.  The
City Attorney explained the sewer-extension requirement in a letter to the City
Manager, and the City Manager forwarded the explanation to Hawkins.  Ultimately, as described below, the City
agreed to reimburse and did reimburse Rischon for the cost of the offsite
Bandit Trail utility extensions.

Notwithstanding its dispute with the Bandit Trail
sewer extension, Rischon submitted to the City Council a Developer=s Agreement outlining the costs of
construction, what was required, and how the construction would be carried
out.  The City Council approved the
agreement on March 21, 2000; Hawkins signed it on behalf of Rischon on March
22; and City staff signed it by March 23. 
The City and Rischon agreed as follows:

1.         Rischon agreed to build sidewalks along right-of-ways that
did not front lots;

 

2.         Rischon agreed to pay $23,000 in park fees in lieu of
dedicating  land for public use;

 

3.         Rischon agreed to pay $34,500 in roadway impact fees;

 

4.         Rischon agreed to escrow $8,575 for construction of the
Davis Boulevard sidewalk;

 

5.         Rischon agreed to build and pay for 400 feet of offsite
water main extending north of Rolling Wood;

 

6.         Rischon agreed to build and pay for 255 feet of ten-inch
offsite sewer line and 738 feet of eight-inch sewer line running to the north
to connect to the Trinity River Authority sewer main;

 








7.         The city agreed to reimburse Rischon for the cost of
constructing a six-inch onsite water line to the southeast corner of the
development;

 

8.         The City agreed to reimburse Rischon for the cost of
constructing a six-inch offsite water line from Rolling Wood to Bandit Trail;

 

9.         The City agreed to reimburse Rischon for the cost of
constructing the eight-inch sewer line from Rolling Wood to Bandit Trail;

 

10.       The City agreed to release 10% of the building permits for
Rolling Wood when the City accepted the development=s
water, sewer, drainage, and street facilities; and

 

11.       The City agreed to issue building permits for all lots after
the final acceptance of Rolling Wood. 

 








On March 28, 2000, Rischon sent a letter to the
City requesting changes to the February 2, 1999 rezoning ordinance.  Rischon wanted (1) to participate in the city=s Water & Sanitary Sewer Main
Extension Policy, which would have offset the cost of some of the utility
extensions; (2) the return of the $8,575 escrowed for the Davis Boulevard
sidewalk; (3) to not be required to install an entry gate to Rolling Wood and
thus be excused from installing fire sprinkler systems on the lots within 600
feet of Davis Boulevard; (4) to change the hike and bike trails from those
approved on the plat; (5) to change the landscaping around the pond; (6) to
construct a wood fence behind certain lots; and (7) to increase the minimum
square footage of homes from 2,400 square feet to 3,000 square feet.  The City told Rischon that it needed to apply
for a zoning amendment because all of the requested changes were changes to the
zoning ordinance. 

On September 1, 2000, Rischon applied for a zoning
amendment, requesting the same changes as in its March 28, 2000 letter.  The City=s
Planning and Zoning Commission heard the application on October 9 and
recommended denial, and the City Council heard and denied the application on
November 7. 

In the spring of 2001, Rischon filed a second
zoning amendment application, requesting (1) to replat Rolling Wood as a public
subdivision rather than a private subdivision, (2) to eliminate the perimeter
fence in its entirety and build a wrought iron fence along Davis Boulevard
only, and (3) reduce the length of the hike and bike trails within Rolling
Wood.  On May 14, 2001, the Planning and
Zoning Commission recommended denial, and the City Council denied the
application on June 5. 








On January 26, 2001, the City reimbursed Rischon
for the construction of certain offsite water and sewer lines, including the
Bandit Trail lines, as per the Developer=s
Agreement and released 10% of the Rolling Wood building permits.  On February 22, 2001, Rischon completed the
water, sewer and drainage facilities at Rolling Wood.  By February 8, 2002, Rischon substantially
completed all the necessary work required by the February 22, 1999 zoning
amendment, and the City released all of the building permits for Rolling Wood. 

Rischon sued the City on July 15, 2002, alleging
that the water and sewer extensions, fencing, sidewalks, and fire sprinkler
systems required by the February 1999 zoning ordinance constituted a taking
under the Texas constitution.  The
parties tried the case to the bench.  The
trial court made findings of fact and conclusions of law, including findings
and conclusions that Rischon consented to, proposed, or adopted without
objection the provisions of the February 1999 zoning ordinance and the
Development Agreement.  The trial court
rendered a take-nothing judgment, and Rischon filed this appeal. 

III.              
Discussion

In three issues, Rischon argues that, as a matter
of law, the requirements imposed by the City on Rolling Wood were compensable
takings in the form of exactions.  In
reply, the City argues that Rischon consented to all of the requirements.[1]

 








A.                
Standard of review

The trial court made findings of fact and
conclusions of law.  Although Rischon
recites the factual sufficiency and legal sufficiency standards of review in
its brief, it does not specifically challenge any of the trial court=s findings of fact; it does, however,
challenge several of the conclusions of law as supported by no evidence or
contrary to the great weight and preponderance of the evidence. 

Unchallenged findings of fact are binding on an appellate
court unless the contrary is established as a matter of law or there is no
evidence to support the finding.  McGalliard
v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); Raman Chandler Props.,
L.C. v. Caldwell=s Creek Homeowners
Ass=n, Inc., 178 S.W.3d 384, 390 (Tex. App.CFort Worth 2005,
pet. denied).  A party may not challenge
conclusions of law for factual sufficiency, but we may review conclusions of
law to determine their correctness based upon the facts.  Citizens Nat=l Bank v. City of
Rhome, 201 S.W.3d 254, 256 (Tex. App.CFort Worth 2006,
no pet.); Dominey v. Unknown Heirs and Legal Representatives of Lokomski,
172 S.W.3d 67, 71 (Tex. App.CFort Worth 2005,
no pet.).








We will uphold a conclusion
of law if the judgment can be supported on any legal theory supported by the
evidence.  Tex. Dep=t of Public Safety v. Stockton, 53 S.W.3d
421, 423 (Tex. App.CSan Antonio
2001, pet. denied).  We review
conclusions of law de novo, State v. Heal, 917 S.W.2d 6, 9 (Tex. 1996),
and we will not reverse them unless they are erroneous as a matter of law.  Stockton, 53 S.W.3d at 423. 

B.                
Consent

The takings clause of the Texas constitution
prohibits the State from taking private land for public use without
compensation or consent:

No
person=s
property shall be taken, damaged or destroyed for, or applied to public use
without adequate compensation being made, unless by the consent of such
person.

 

Tex. Const. art. I,
' 17 (emphasis added).[2]  Several different general categories of
takings claims exist.  A distinct
category of takings occurs when the government conditions the approval of
permits on an exaction from the approval-seeking landowner.  Town of Flower Mound v. Stafford
Estates, L.P., 








71 S.W.3d 18, 30 (Tex. App.CFort
Worth 2002) (AFlower
Mound I@), aff=d, 135 S.W.3d 620 (Tex. 2004) (AFlower Mound II@) (citing Dolan v. City of Tigard, 512 U.S.
374, 377, 114 S. Ct. 2309, 2312 (1994)). 
Any requirement that a developer provide or do something as a condition
to receiving municipal approval is an exaction. 
Flower Mound II, 135 S.W.3d at 625.

A landowner may consent to
property being taken or damaged without payment of any compensation.  Tex.
Const. art. I, ' 17; Hale
v. Lavaca County Flood Control Dist., 344 S.W.2d 245, 248 (Tex. Civ. App.CHouston 1961, no writ).  Consent
is an act of the will; it need not be written, but may be spoken, acted, or
implied.  Hightower v. City of Tyler,
134 S.W.2d 404, 407 (Tex. Civ. App.CEl Paso 1939, writ ref=d).








A landowner who objects to
city-imposed requirements at every opportunity and administrative level does
not consent to a taking by exaction even if the landowner waits until after
receiving permit approval and after performing the complained-of
requirements.  Flower Mound I,  71 S.W.3d at 28.  In Flower Mound, a landowner sought to
develop land within the town of Flower Mound. 
Id. at 25.  As a condition
of plat approval, the town required the landowner to rebuild a road abutting
the project at the landowner=s sole expense in accordance with a town ordinance.  Id. 
The landowner sought an exemption from the ordinance and objected to the
road-improvement requirement Aat every level within the Town.@  Id.  The landowner sued the town after the
town approved its plat and after the landowner rebuilt the road.  Id. 
The town argued that the landowner waived its takings claim by
failing to file suit before the town approved the plat and by accepting the
benefit received in exchange for the exaction, namely, approval of its plat.  Id. at 27.  Rejecting the town=s waiver argument, we emphasized that the landowner Adid unsuccessfully object to the [road] improvements condition at
every administrative level within the Town.@  Id. at 28.  The supreme court likewise rejected the
municipality=s argument,
also noting that Aas the
parties stipulated, [the landowner] objected to the condition at every
opportunity, and the [town] was well aware of [the landowner=s] position.  Flower Mound II,
135 S.W.3d at 630; see also Sefzik v. City of McKinney, 198
S.W.3d 884, 895 (Tex. App.CDallas 2006, no pet.) (rejecting city=s waiver and estoppel defenses when developer objected to the
condition imposed for plat approval at every administrative level).

This case is unlike Flower
Mound and Sefzik because Rischon did not object at Aevery opportunity@ and Aevery
administrative level@ to the
requirements it now identifies as exactions. 
To the contrary:  Rischon raised
no objections to the requirements of which it now complains until after the
City approved the plat and after Rischon and the City entered into the
Developer=s Agreement.








Rischon identifies eight Arequirements@ that it
claims are exactions: (1) the utility line extensions; (2) the park zone
dedication fee in lieu of park land dedication; (3) the roadway impact fees;
(4) the hike and bike trails; (5) the money escrowed for the Davis Boulevard
sidewalk; (6) the sidewalks within the subdivision; (7) the residential fire sprinklers;
and (8) the wrought iron perimeter fence. 
Rischon=s own 1998
zoning application requested approval of the hike and bike trails and the
wrought iron fence along the front of the property.  When City staff recommended internal
sidewalks, a sidewalk on Davis Boulevard, and residential fire sprinklers,
Rischon did not object, and the trial court found that Rischon consented to
these recommendations.  When the City
Council considered and approved the zoning application with the addition of the
staff recommendations, Rischon did not object.

When Rischon submitted its
preliminary plat to the Planning Commission, it stated that it would comply
with staff recommendations for a wrought iron perimeter fence.  Rischon did not object when the City approved
the preliminary and final plats including the wrought iron perimeter fence. 

After final approval of its
plat, Rischon did object to paying for the extension of utilities to Bandit
Trail.  But the City ultimately agreed to
pay and did pay for those extensions.








After the City approved the
plat, Rischon negotiated and entered into the Developer=s Agreement with the City on March 21, 2000.  In the agreement, Rischon agreed to build
internal sidewalks, pay the park fee in lieu of dedicating park land, pay the
roadway impact fee, escrow $8,575 for the cost of building the Davis Boulevard
sidewalk, and build 400 feet of eight-inch offsite water main extending north
of Rolling Wood and 255 feet of ten-inch and 738 feet of eight-inch sewer line
extending north of Rolling Wood to connect to the Trinity River Authority sewer
main.  The City agreed to reimburse
Rischon for sewer and water lines running to the adjacent Bandit Trail area.

Thus, when Rischon signed the
Developer=s Agreement,
it had either proposed, adopted without objection, or agreed to without
objection all eight of the requirements it now identifies as exactions.

Not until March 28, 2000Cafter Rischon consented to staff
recommendations without objection and after it signed the Developer=s AgreementCdid Rischon
finally raise, in a letter to the City, objections to the requirements for the
Davis Boulevard sidewalk, the fire sprinklers in houses close to Davis
Boulevard, the hike and bike paths, and the wrought iron fence except along
Davis Boulevard.  On September 1, 2000,
Rischon filed a zoning amendment application requesting the refund of the Davis
Boulevard sidewalk funds, elimination of the requirement to build fire
sprinkler systems, reduction in the length of the hike and bike trails,
changing the perimeter fence from wrought iron to wood, and elimination of the
internal sidewalks.  The Planning
Commission and the City Council denied the application. 








Rischon raised more
objections in a second zoning amendment application in 2001, seeking to
eliminate the perimeter fence except along Davis Boulevard and reduce the
length of the hike and bike trails. 
Again, the Commission and the Council denied the application. 

The trial court made
conclusions of law that Rischon either proposed all of the provisions of the
Rolling Wood development or adopted them without objection.  The trial court specifically concluded that
Rischon consented to the payment of the roadway impact fees and the park
fees.  The trial court=s unchallenged findings of fact support these conclusions.

Rischon argues that the only
conclusion of law the trial court made with regard to consent concerns the
roadway impact fees and the park fees. 
While the only conclusion containing the word Aconsent@ is the one
dealing with the roadway impact fees and the park fees, the trial court also
concluded that Rischon proposed or adopted without objection all of the
Rolling Wood requirements.  In this case,
in light of the trial court=s unchallenged findings of fact, Aproposed or adopted without objection@ is indistinguishable from Aconsented.@  








We hold that by proposing,
adopting without objection, or agreeing in the Developer=s Agreement without objection to all of the Rolling Wood Arequirements,@ Rischon
consented to those requirements. 
Therefore, the trial court did not err by rendering a take-nothing
judgment on Rischon=s
claims.  We overrule Rischon=s three issues and affirm the trial court=s judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL A:   HOLMAN, GARDNER, and MCCOY, JJ.

 

DELIVERED:  November 29, 2007











[1]The
City also argues that Rischon lacks standing to assert a takings claim because
it purchased the property after the City approved Rischon=s
zoning request.  But as the City
acknowledges, some of the requirements Rischon identifies as exactionsCfor
example, the roadway impact feesCdid not arise until after
Rischon purchased the property.  Thus,
even if the City=s
standing argument has merit, it is not a bar to all of Rischon=s
claimed exactions.





[2]Although
Rischon contends in its first and second issue statements that it established a
taking Aunder
federal law,@
nowhere in its brief does it cite or even mention the federal constitution; nor
did it allege a taking under the federal constitution in its trial court
pleadings.  And in a trial court brief,
Rischon specifically stated, A[W]e are in fact litigating
based upon the Texas Constitution . . . .@  Therefore, we construe Rischon=s
claims to allege a taking under the Texas constitution only.